[Civ. No. 820.    Third Appellate District.—May 5, 1911.]

## THE PEOPLE ex rel. J. ESCALLE, Appellant, v. TOWN OF LARKSPUR, Respondent.

MUNICIPAL CORPORATIONS — FORMATION — FILING OF PETITION — DUE PUBLICATION BEFORE PRESENTATION TO BOARD.—The mere filing of a petition for the formation of a municipal incorporation with the clerk of the board of supervisors, and his notice to the board that it had been filed, cannot deprive the board of power to act on the same, under the municipal corporation act, where before its presentation to the board for their consideration it was published for the period required by that act.

ID.—SILENCE OF RECORD AS TO AUTHORITY FOR PUBLICATION—PRESUMPTION.—It having been held that the publication of the petition by the petitioners is warranted by the statute, although the record in this case is silent as to by whom or on whose order the petition was published before its presentation to the board, it must be presumed that the publication was under proper authority; and it cannot be held that was such irregularity in the proceedings as would invalidate the action of the board.

ID.—CONTINUANCE OF TIME BEYOND STATUTE PERIOD—ADJOURNMENT OF MEETING FROM DAY TO DAY—LEGAL HOLIDAYS—STATUTE NOT MANDATORY—PRESUMPTION.—Though the statute provides that after presentation of the petition the board may adjourn the hearing from time to time, not exceeding two months, and it appears that the petition was presented after due publication, November 4, 1907, and the hearing was continued from time to time, and was taken up for consideration at the next regular meeting, beginning Jan-

uary 6, 1908, which was continued from day to day on account of legal holidays declared by the governor, until January 13, 1908, when the petition was finally granted two months and one week after its first publication, the statute is not to be regarded as mandatory; but it must be presumed that the latter adjournment was a mere continuance of the regular meeting, for a reasonable period and for good cause.

ID.—VALIDITY OF ELECTION—NONCOMPLIANCE WITH LAW—RESULT NOT AFFECTED—DIRECTORY PROVISIONS.—Where it appears that, in any view of the facts, the expression at the polls showed that the majority of all the electors who were entitled to vote was in favor of the incorporation, it is held that provisions as to the notice of the election and as to the duty of the election board to open the polls at the proper time are to be deemed directory, where failure to comply strictly therewith is not made by the terms of the statute to avoid the election and such failure has not affected the result.

ID.—EFFECT OF GREAT DEVIATION—PRESUMPTION—BURDEN OF PROOF SUSTAINED.—Where the deviation from the statute is considerable or great, the presumption will be that it has affected the result; and the burden will be cast upon him who seeks to uphold the election to show affirmatively that the result has not been affected. It is held that this burden was successfully sustained in the present case.

APPEAL from a judgment of the Superior Court of Marin County. Thos. J. Lennon, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney General, for People, Appellant.

Henry B. Lister, for Relator.

Lucius L. Solomons, for Respondent.

CHIPMAN, P. J.—This is an action in *quo warranto* calling upon the corporation of the town of Larkspur to show cause for the exercise of the franchise under which it is acting, failing in which that an ouster be decreed. The defendant had judgment, from which plaintiff appeals.

It is alleged in the amended complaint that the town of Larkspur is and has been, since March 2, 1908, a *de facto* (but not a *de jure*) municipal corporation, claimed to be a legally organized municipal corporation, by virtue of certain

proceedings taken under the municipal incorporation act, approved March 13, 1883, and amendments thereto, and by virtue of certain articles or an order of incorporation issued by the board of supervisors of the county of Marin and filed in the office of the Secretary of State, and that certain trustees have been elected and are now pretending to be the officers of said *de facto* municipal corporation, and ever since said second day of March, 1908, "have usurped and intruded upon and municipally exercised the following franchise, to wit: That of assessing, levying and collecting municipal taxes and exercising municipal and governmental control over the following described premises and real estate lying and being in the county of Marin, state of California, bounded and described as follows": (Then follow the boundaries of the territory included within the limits of the said town); that the "same is now and during all said times was within the jurisdiction of and subject to be governed by the board of supervisors of said Marin county, and was in truth and in fact, not incorporated for municipal purposes, and the said territory is in truth and in fact not municipal territory."

It is not necessary to set out the averments of the complaint and answer. The court, in its findings, deals with the issues in a way to make clear the controverted questions.

The court found: 1. That the facts alleged in the complaint relating to the claim of defendant to be a *de facto* corporation and exercising municipal franchises as such, were true; 2. That the board of supervisors, on March 2, 1908, passed an order declaring the territory, described in the complaint, to be a municipal corporation; 3. And on said day said order was filed in the office of the Secretary of State; 4. That relator was at all times a qualified elector in said territory; 5. That on October 7, 1907, a petition for the incorporation of said municipal corporation was filed with the clerk of the board, at a regular meeting and "by said clerk reported at said meeting to said board of supervisors as having been received"; but 6. The said petition, at the time it was so filed, had not been published in any newspaper; 7. That on October 10, 1907, said petition was published in a newspaper published in said county, together with a notice that the same would be presented to the board at its regular meeting to be held November 4, 1907, and the said publication of

said petition and notice was made continuously for more than two weeks next preceding said last-named date; 8. That on said last-named date said petition was presented to said board at a regular meeting held on said day, ''and was received by them and the hearing thereof continued from time to time; and on the sixth day of January, 1908, the said day being the regular monthly meeting of the said board of supervisors, the said petition was again taken up and considered and continued from time to time until the thirteenth day of January, 1908; the said board in the meantime adjourned its regular monthly meeting from day to day to and including the said thirteenth day of January, 1908, on which said day said board of supervisors granted said petition and made an order of election in the words and figures following, to wit:'' Then follows a very full recital of the proceedings had up to that time, which need not be stated, as the legality of the procedure is questioned only in a few particulars which will be shown. It is recited that the petition ''was duly published for two weeks before the time at which the same was presented as aforesaid, in the 'Tocsin' of San Rafael, a newspaper published and printed in said Marin county, together with a notice stating the time of the meeting at which the same would be presented, to wit, the said fourth day of November, 1907. And whereas, upon such petition being so presented this board proceeded to hear the same and did adjourn such meeting from time to time, and upon the final hearing thereof, to wit, at the regular meeting of this board on the thirteenth day of January, 1908, did,'' etc. It was also ordered that the clerk give notice of an election to be held February 27, 1908, prescribing the purpose of the election and the form and substance of the notice, said election to be conducted in accordance with the general election laws of the state, and directing that the polls ''shall be open at 6 o'clock of the morning of February 27, 1908, and shall be kept open until 5 o'clock of the same day, when the polls shall be closed''; 9. That said board provided that the polls should be opened as in said order stated; 10. That the polls did in fact close at 5 P. M., in accordance with the notice of election, without other reason than that the order so provided; 11. That the polls did not open at 6 o'clock A. M., and in fact were not open until the hour of 8:30 o'clock A. M., and remained open only eight and one-half hours in-

stead of twelve hours as provided by law; 12. That the regular printed ballots did not arrive at the polls until 8:30 o'clock A. M., and that prior thereto 12 votes were cast by ballots entirely written by hand, and all said 12 votes were marked ''for incorporation'' and counted as valid ballots for incorporation; 13. That in said territory there were 297 persons whose names were duly enrolled upon the great register, ''all of whom had at some time lived in said territory prior to the twenty-eighth day of December, 1908.''   Out of said 297 there were 276 ''who were still living and whose names had not been canceled or erased from said register at the time of said election''; 14. That the total vote cast was 147, of which there were 10 not voting on the question of incorporation; of these 147 there were 36 ballots cast against incorporation and 101 for incorporation, but of these latter, 12 were cast upon ballots written wholly by hand, as hereinabove set forth; 15. That the said board thereafter held an official canvass of the ballots and made a finding that 147 votes had been cast, and that 101 of said votes were for incorporation and 65 against incorporation, and upon said finding declared the said town of Larkspur and the said territory to be duly incorporated, and said order was subsequently filed with the Secretary of State; 16. That between the hours of 6 o'clock A. M. and 8:30 o'clock A. M. on the day of the election, ''a number of the qualified electors of the district appeared at the polls and demanded the right to vote and were refused because there were no ballots with which to vote''; 17. That between the hours of 5 o'clock P. M. and 6 o'clock P. M. of said day, ''a number of qualified electors appeared at the polls for the purpose of casting their ballots and found the same closed.   That all of said electors worked outside the territory hereinabove set forth and some of them would have voted against incorporation''; 18. That the following named persons whose names appeared on the great register as above set forth were dead at the time of the election, naming four; that 17, naming them, had removed their residence from the said district prior to the election and their names had been canceled upon the great register; that 85, naming them, ''had removed their residence from the said district prior to said election, never having returned thereto but having left with the intention of abandoning their respective residences in said district and have ever ·

since resided outside thereof''; that 10, naming them, legally qualified to vote at said election, ''refrained from voting thereat by reason of indifference or physical inability to attend at the polls, but were not in any way prevented from voting by reason of the hours of opening and closing the said polls''; 19. That on March 2, 1908, at the regular meeting of the board, an order was unanimously adopted by said board declaring that a majority of the ballots at said election had been cast in favor of incorporation, and that said territory was duly incorporated as a municipal corporation of the sixth class; 20. ''That if the polls had been opened at 6 o'clock A. M. and closed at 6 o'clock P. M. and remained open during said interval on the day of said election, and all who were residents of the territory named for the said period of sixty days and who wished to vote had voted, the result of said election would have been in favor of the incorporation of the said territory by a majority of the ballots cast''; 21. ''That the total number of those who appeared at the polls between the hours of 6 o'clock A. M. and 8:30 o'clock A. M. and demanded the right to vote and were refused and did not vote at said election, added to the total number of those who appeared thereat between the hours of 5 o'clock and 6 o'clock P. M., and were unable to vote did not exceed in the aggregate 30 persons.''

As conclusions of law the court found that defendant was entitled to judgment that said town of Larkspur ''is a municipal incorporation of the sixth class lawfully exercising the functions imposed by law upon such municipal incorporations.''

Plaintiff excepted to the decision on the ground of the insufficiency of evidence to sustain the findings of fact, and the plaintiff now specifies all that portion of the eighteenth finding which states, ''that certain named persons had removed from the district prior to said election, to wit, the following persons,'' specifying certain 41 names. The bill of exceptions states: ''The following testimony was taken in connection with that portion of the eighteenth finding of fact by the plaintiff hereinafter excepted to.'' No testimony or other evidence is brought up except such as bore upon these 41 names. The only other specification is, ''That the findings of fact do not support the conclusions of law nor do they

support the judgment.'' Let us, then, notice the points made in the briefs.

1. It is contended that after the petition was presented to the board it was too late to have publication made of the hearing. It appears from the findings that it was filed with the clerk on October 7, 1907, at a regular meeting of the board, and was reported to the board by the clerk as having been received. It does not appear by whose order or request it was published, but the court found that it was duly published together with a notice that it would be presented at the regular meeting of the board to be held November 4, 1907, and it was then presented. Section 2 of the act of 1883, as amended by the act of 1889 (Stats. 1889, p. 371), provides, among other things, that: ''Such petition shall be presented at a regular meeting of such board, and shall be published for at least two weeks before the same is to be presented. . . . When such petition is presented, the board of supervisors shall hear the same, and may adjourn such hearing from time to time, not exceeding two months in all,'' etc. In *People* v. *Town of Linden,* 104 Cal. 94, [40 Pac. 115], it was held that the publication of the petition by the petitioners was warranted by the statute. The record here does not show by whom ·or upon whose order the petition was published. It was received by the clerk and the board was so advised, but it was not *presented* to the board for action until after its due publication. We must assume that the publication was under proper authority, and, as it was not presented to the board for action until after due publication, we find no such irregularity in the proceeding as would invalidate the action of the board.

2. It is next contended that the board lost jurisdiction by failure to act upon the petition within two months from the time of its presentation, as required by section 2 of the act of 1883 as amended in 1889. (Stats. 1889, p. 371.) The findings are that the petition was received by the board November 4, 1907, and the hearing thereof continued from time to time; and on the sixth day of January, 1908, at a regular monthly meeting, it came up again for hearing ''and was taken up and considered and continued from time to time until the twelfth day of January, 1908; the said board in the meantime adjourned its said regular monthly meeting from day to day to · and including the said thirteenth day of January, 1908, on

which said day said board granted the said petition," etc.
The statute reads, "may adjourn such hearing from time to
time not exceeding two months." The final hearing was had
and the order made two months and one week after the fourth
day of November, when the petition was presented. We do
not regard the statute as mandatory. Unavoidable circum-
stances may have arisen making it imperative to adjourn the
hearing from day to day. Such an adjournment was a contin-
uation of the regular meeting. It is stated by respondent that
"the action of the supervisors in adjourning the hearing was
evidently done out of abundance of caution by reason of the
fact that so-called legal holidays were being declared from day
to day by the governor at that time." The adjournment was
not for an unreasonable period, and we must presume it was
for good cause.

- 3. The validity of the election is challenged because the
notice of election and the election itself did not comply with
the law. The findings show a violation of the statute, but did
it necessarily invalidate the election? Let us see what facts are
found. There were 276 registered voters. Of these, 119 were
eliminated by the court's findings, the correctness of which is
not challenged, except as to 41, whom we shall show that the
court was authorized to include among the 119. There were
thus 157 registered voters qualified to vote. Of these, 10,
through no fault of the board, did not appear at the polls,
leaving 147 voters. Of these latter, 101 voted for incorpora-
tion and 36 voted against incorporation, making a majority of
65 for incorporation. If we take from these the twelve writ-
ten ballots the majority is reduced to 53. The court found
that there were not to exceed 30 who were deprived of their
votes by reason of the short hours of the election. Deducting
these, on the assumption that they would have voted against
incorporation, we still have 23 majority. Again, there were
147 electors who voted. After deducting the 12 written bal-
lots from the 101 cast for incorporation, there remained 89
for incorporation, which is a clear majority over the entire
number of voters. So that, in any view of the facts the ex-
pression at the polls showed that a majority of all the electors
who were entitled to vote was in favor of incorporation. We
are next to inquire whether, in such a case, the will of the

majority is to be set aside on the ground now urged.  We think the principles enunciated in the well-considered case of *Kenworthy* v. *Mast,* 141 Cal. 268, [74 Pac. 841], are decisive of the question.  The general rule laid down in McCrary on Elections, section 165, is quoted approvingly, namely, that where there is no statutory provision expressly declaring that a failure, in the respect now being considered, shall render the election void, it will be regarded as directory only, and that, unless the deviation from the legal hours has affected the result, it will be disregarded, but that if such deviation is great, or even considerable, the presumption will be that it has affected the result, and the burden will be upon him who seeks to uphold the election to show affirmatively that it has not. That burden was successfully borne in the present case.

4. It is said that the finding of the board that there were 147 votes cast at the election, of which 101 were for incorporation and 65 against incorporation, "is certainly void for impossibility."  Doubtless the entry was a clerical error, by confusing the majority for incorporation (65) with the vote cast against incorporation (36).

However, at the instance of both parties the court inquired into the facts and determined them, and both must abide by the result of the evidence.

5. It is urged that there is no evidence to support the eighteenth finding as to certain 41 names once on the great register.  We have examined the testimony and find abundant evidence to warrant the finding.  The testimony introduced by plaintiff was hardly sufficient to raise a conflict—certainly not as to most of the names.

We discover no error in the record.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1911.

Beatty, C. J., dissented from the order denying a rehearing in the supreme court, and filed the following opinion on July 6, 1911:

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause.

The electors of the territory claiming to be a corporation having been deprived by the misconduct of the election board of the opportunity of casting their votes, which the law is intended to secure to them, the *onus* of proving that the result of the election would have been the same if the law had been strictly complied with was on the defendant. This proof the defendant undertook to make by showing that from the total number of registered voters within the territory affected (viz., 297), there must be deducted four who had died, 17 whose registry had been canceled, 86 removed from the territory, 10 who had voted, but had not voted on the question of incorporation, and 10 who were indifferent and would not have voted under any circumstances—a total of 127, leaving but 170 electors to be considered, of whom 89—a majority—voted in favor of the incorporation. But conceding that the statute is not mandatory in respect to the hours during which the polls must be kept open—a proposition by no means clearly established—and that all of the 86 supposed removals were fully proven—a point vigorously contested by the appellant—and fully conceding the propriety of deducting the number of deceased electors, the number of canceled registrations, and the number of those voting but failing to vote for or against incorporation, it is still necessary to maintain that it was proper to exclude also the 10 voters who are said to have been so indifferent to the result that they would not have taken the trouble to vote if the polls had been kept open all day. For including them there would have been 180 electors to be considered, and of that number 89 is not a majority. Now, there is in my opinion a very grave objection to making a precedent applicable to all special elections hereafter to be held, which, in case of a close contest, where the electors have been deprived by the misconduct of the election officers of a fair opportunity to cast their votes, will enable interested parties to give validity to the result of the canvass by inducing a small number of electors, who have not voted, to say that they would not have voted if the law had been complied with. Such a doctrine is subversive of the policy of the secret ballot, the aim of which is to take away all temptation to the use

of bribery, and all effective means of coercive influence. Under its operation a bribe giver can never know that the goods will be delivered, and one who is dependent upon the goodwill or forbearance of another for his livelihood may safely disregard the demands of his employer in casting his vote. But an elector who is willing to accept a bribe to vote either way upon a given proposition would be very likely to forego the privilege of voting in the absence of any inducement to vote in a particular way, and after the election could be very easily induced to swear that he had never desired to vote, and—what is a much more serious evil—an elector who had been deprived of the opportunity of voting against a proposal might after the election be put to the alternative of risking the support of his family, or of swearing that he had never desired to vote. To preserve the integrity of the secret ballot against such practices as the doctrine of this case will sanction is vastly more important, in my opinion, than the validation of a municipal charter brought into existence by such dubious practices. If the people of Larkspur desire a charter they can easily secure it by complying with the law.

Sloss, J., concurred.