[Civ. No. 5561. Third Appellate District.—January 4, 1936.]

COUNTY OF SACRAMENTO et al., Petitioners, v. WM. R. STEPHENS, as County Auditor, etc., Respondent.

Otis D. Babcock, District Attorney, Sacramento County, for Petitioners.

Lowell L. Sparks, District Attorney, Placer County, for Respondent.

THOMPSON, J.—This is a petition for a peremptory writ of *mandamus* to compel the Auditor of Placer County

to issue school bonds in the sum° of $6,500, which were voted by the electors of the Dry Creek Joint Elementary School District at a bond election which was held therein pursuant to law. This proceeding was instituted to determine the validity of the bonds. The respondent contends that the bonds are void on account of the failure of the trustees of the district to segregate the district into precincts for the purpose of election and because notice of the election was not published as required by section 4.961 of the School Code in a Sacramento County newspaper in addition to the one which was published in a Placer County newspaper, since portions of both counties are included in the school district.

This proceeding involves the following stipulated facts: Dry Creek Joint Elementary School District was organized pursuant to law. It has existed since 1857 and includes territory belonging to both contiguous counties of Placer and Sacramento outside of any incorporated city therein. The school building in question is now and always has been situated in that portion of the joint district within the County of Placer, where the greater number of pupils reside. Under the provisions of section 2.81 of the School Code, jurisdiction of the school district is conferred upon the county superintendent of the county where the greater number of pupils reside. The two school buildings which are located therein are old, dilapidated, unsanitary and unfit for educational purposes of the district. On June 20, 1934, they were condemned as unfit and unsafe for school purposes. At a regular meeting of the board of trustees of that district called for that purpose, pursuant to law, the trustees unanimously voted to hold an election therein pursuant to section 4.960 of the School Code on March 21, 1935, to authorize the issuing of bonds in the sum of $6,500 for the construction of new school buildings and to improve the grounds and furnish necessary equipment therefor. Pursuant to section 4.963 of the School Code, which requires a bond election to be conducted in the same manner as an election for school trustees, the board duly designated the district schoolhouse as the place where the bond election was to be held pursuant to section 2.870 of the same code, and directed that the election be held in the joint district as a whole constituting but one precinct thereof. Notices of the time and place of election together with a copy

of the architect's sketches of the proposed school building and a statement of the maximum tax rate required to construct and furnish the same were personally delivered to each registered voter of the district or left for him at his residence prior to the election day. Official notices of the time and place of holding the election, signed by all of the trustees, were posted in three public places within the district in both Sacramento and Placer Counties, for more than twenty days prior to the election as provided by section 4.961 of the School Code. An official notice of the time and place of the election was also published in conformity with the last-mentioned section of the code in the "Roseville Tribune and Register", a newspaper of general circulation printed and published at Roseville in Placer County. Notices of the time, place and purpose of the school bond election were repeatedly printed as matters of news in both the "Roseville Tribune and Register", and in the "Sacramento Bee" prior to the election, the last-mentioned newspaper having a wide circulation among the electors of the school district in both counties. The necessity and proposal to submit the question of constructing and equipping new schoolhouse buildings were widely discussed among the electors of that district prior to the election. All school elections of that district had invariably been held in the school building which was designated as the place for holding this bond election since its organization as a school district. The election was conducted in every respect as required by statute. Prior to the election certified copies of the register of qualified electors in the school district in both Sacramento and Placer Counties were procured from the respective county clerks pursuant to section 2.878 of the School Code, showing the names of all electors who were entitled to vote at the school election. All of the qualified electors residing in that portion of the school district which is located in Sacramento County voted at the school election with the exception of four individuals. Unusual interest was exhibited by the electors in the bond election, and an unusually large vote was cast thereat, being nearly four times as large as the vote cast for trustees of that district at the following election therefor. There is no evidence that any elector in the district was ignorant of the time or place of the election, and no elector was precluded from voting thereat.

The bond election was carried by more than the necessary majority of two-thirds of all electors voting thereat. If the four persons residing in the Sacramento portion of the district who failed to vote at the bond election were also counted as voting against the bonds, there would still be a majority in favor of the bonds in excess of two-thirds of all the qualified electors who participated in the election. It does not appear that the substantial rights of any taxpayer of the school district were injuriously affected by the failure to officially publish the notice of election in a Sacramento County newspaper. The election returns were regularly canvassed pursuant to law and the bonds were declared to have been carried by a two-thirds' majority. Owing to the alleged defect of publication of notice the Auditor refused to issue or certify the bonds or offer them for sale as required by law. This petition for a writ of *mandamus* was brought to validate the bonds and to compel the respondent to issue and certify the bonds as valid obligations of the school district.

The respondent asserts that the bonds are void for the reasons that the entire school district was designated as one precinct for the purpose of the bond election, with the polling place àt the schoolhouse building in Placer County, and that no separate precinct or polling place was designated for that portion of the district which is located in Sacramento County, and that the trustees failed to separately publish a notice of the time and place of holding the election in a Sacramento County newspaper pursuant to the provisions of section 4.961 of the School Code.

It was not illegal for the board of trustees of Dry Creek Joint Elementary School District to designate only one voting precinct and polling place for the bond election in spite of the fact that the district was composed of parts of two different counties. Section 4.963 of the School Code provides regarding the conducting of bond elections that:

"The election shall be conducted as elections for ·school trustees of elementary school districts are conducted, except as may be otherwise provided in this chapter. . . . "

There is no provision of law in the chapter affecting school bond elections which requires more than one precinct or polling place to be designated for bond elections. In fact, the chapter contemplates the designating of one or more polling

places in the discretion of the trustees. Section 4.962 of the School Code provides that:

"The said notice [of election] must contain:

"1. The time and *place,* or places, of holding the election."

For the purpose of electing trustees of an elementary school district section 2.875 authorizes the trustees to divide the district into several precincts as a matter of accommodation to the electors, if they see fit to do so, but that privilege is discretionary and not mandatory. The section reads:

"Trustees or boards of education charged with the calling, conducting, and carrying on of elections, *may* subdivide the district into election precincts for the holding of the election, and may change and alter such precinct as often as occasion may require. . . . "

Section 2.870 of the same chapter contemplates that the election shall be held "at the district schoolhouse" of the district, which infers that there shall be but one polling place, unless the trustees see fit to subdivide the district pursuant to the section above mentioned. The section last cited provides in that regard:

"An election for school trustees must be held in each school district on the last Friday of March of each year, *at the district schoolhouse,* if there is one, and if there is none, *at the place* to be designated by the board of trustees."

No different procedure is prescribed by law even though the district is composed of parts of two or more counties. The failure to subdivide the school district or to designate more than one polling place for the bond election was not illegal and the bonds are not invalid on that account.

■ We are of the opinion the statute does not require the publishing of notice of the time and place of a bond election in more than one newspaper of general circulation in the district even though the district may be comprised of portions of two or more counties in each of which there may be such newspapers. Section 4.961 of the School Code provides that:

"If there is a newspaper of general circulation published in any county in which any part of the district is situated, the notice must be published therein at least once in each calendar week for three successive calendar weeks prior to the election."

This section may be reasonably construed to mean that if there be one or more newspapers of general circulation published in any county, a portion of which is included in a joint school district, the notice must be published in one such paper. The section contemplates the publishing of the notice in only one newspaper. It does not require the publishing of the notice in each newspaper of two or more counties, portions of which may constitute a joint school district. If that had been the intention of the legislature, it would have been very easy to have clearly so stated. The statute might then have said: ''If there are newspapers of general circulation in one or more counties, parts of which belong to the same joint district, notices must be published in at least one such paper in each of such counties.''

Even though the preceding section be construed to mean that notices of the election should have been published in newspapers of both Placer County and Sacramento County, the failure to publish an official notice thereof in a Sacramento County paper is harmless and does not have the effect of invalidating the bonds under the circumstances of this case, for the reason that the publication and the posting of notices of the election are deemed to be merely directory and not mandatory in their application to a proceeding affecting the validity of the bonds after they have been carried at an election otherwise conducted according to law. The rule of law in that regard is stated in the case of *County of Sonoma* v. *Sanborn*, 1 Cal. App. (2d) 26, 33 [36 Pac. (2d) 419], as follows:

''It has been held that statutes providing for notices of a bond election are mandatory when they are applied to the situation as it exists prior to the election, but, in the interest of public policy, such statutes are construed to be merely directory in an action to invalidate the bonds after the election has been held and the bonds have been carried, in the absence of a statutory declaration that the election will be invalidated for failure to strictly pursue the statute. (Sec. 4.982, School Code; *In re East Bay Municipal Utility District Bonds of 1925*, 196 Cal. 725 [239 Pac. 38]; *Weisgerber* v. *Nez Perce County*, 33 Idaho, 670 [197 Pac. 562]; *King* v. *Independent School Dist., etc.*, 46 Idaho, 800 [272 Pac. 507, 510]; *Seymour* v. *City of Tacoma*, 6 Wash. 427 [33 Pac. 1059]; *McLoughlin* v. *City of Prescott*, 39 Ariz. 286 [6 Pac.

(2d) 50] ; *State* v. *Superior Court,* 171 Wash. 423 [18 Pac. (2d) 51].)''

After a bond election has been held and carried in substantial compliance with the statute, slight irregularities which do not affect the substantial rights of the taxpayers of the district should be disregarded. Section 4.982 of the School Code provides in that regard :

''No error, irregularity or omission which does not affect the substantial rights of the taxpayers within such district or the electors voting at any election at which bonds of any district of any kind or class are authorized to be issued hereunder shall invalidate the election or any bonds authorized thereby.''

The test for determining whether a bond election is rendered invalid for failure to strictly comply with the statute with relation to the giving of notice thereof is to ascertain whether the voters of the district generally have had knowledge of the time, place and purpose of the election so as to give them full opportunity to attend the polls and express their will regarding the incurring of the obligation, or, upon the other hand, whether the omission has resulted in depriving a sufficient number of the qualified electors therein of the opportunity of exercising their franchise so as to change the result of·the election. (*County of Sonoma* v. *Sanborn, supra;* 20 C. J., p. 96, sec. 80 ; *In re East Bay Municipal Utility District Bonds of 1925, supra; Weisgerber* v. *Nez Perce County, supra.*)

We have no hesitancy in saying from the facts of this case that every qualified elector of the Dry Creek Joint Elementary School District who had any interest whatever in school or public affairs was fully informed of the time, place and purpose of holding the bond election in question. Every requirement of the statutes with respect to the manner and procedure of holding the bond election was strictly pursued, unless, perchance, section 4.961 of the School Code be construed to have required the publication of the official notice of the election in a newspaper published in Sacramento County in addition to the notices which were given. Every qualified elector residing in the Sacramento portion of the district, except four individuals, actually voted at the election. We are unable to see that the added publication of notice in a newspaper of the last-mentioned county would have furnished

information regarding the election to any electors of the district who did not already possess that knowledge. The opposition of the four Sacramento County electors who failed to vote at the bond election would not have changed the result of the election. It does not appear that any elector of the district was ignorant of the time, place or purpose of the election; that any person in the district who desired to vote at that election failed to do so, or that the rights of any taxpayer of the district were injuriously affected by any possible defect of notice. We are, therefore, satisfied that the election was valid in every respect and that the bonds should be validated and issued by the Auditor of Placer County as binding obligations of the school districts.

The writ of *mandamus* will issue directing the Auditor of Placer County to certify and issue the school bonds of Dry Creek Joint Elementary School District in the sum of $6,500 as valid obligations thereof.

Plummer, J., and Pullen, P. J., concurred.