[Civ. No. 200.   Fifth Dist.   Jan. 22, 1963.]

THE HOUSING AUTHORITY OF THE COUNTY OF KINGS, Plaintiff and Respondent, v. WILLIAM R. PEDEN, as County Housing Authority Chairman, etc., Defendant and Appellant.

Lawrence W. Clawson and Ernest W. Dunn, for Defendant and Appellant.

Brown & Tibbs and Lee G. Brown for Plaintiff and Respondent.

Clarence H. Wilson, City Attorney (Hanford), as Amicus Curiae on behalf of Plaintiff and Respondent.

STONE, J.—Appellant, as chairman of respondent Housing Authority of the County of Kings,. was ordered by a peremptory writ of mandate to execute a housing cooperation agreement with the City of Hanford, County of Kings. The city chose to join in a countywide housing development plan under the county housing authority rather than establish a separate city housing authority. For the city to participate with the county, federal housing regulations require a cooperation agreement between the city and the county housing authority. To join in the countywide plan, the Hanford City Council adopted a resolution conforming to the requirements of Health and Safety Code section 34209. In pertinent part that section reads:

"A county authority shall not operate in any city located in the county and in which an authority has not been authorized to transact business unless the consent of the city governing body has been obtained."

Following enactment of the resolution by the city, a county-wide election was held and a countywide housing development plan was approved by a majority of the voters. The election was held pursuant to the provisions of article XXXIV, section 1, of the Constitution of the State of California. Insofar as here pertinent, article XXXIV, section 1, provides:

"No low rent housing project shall hereafter be developed, constructed, or acquired in any manner by any state public body until, a majority of the qualified electors of the city, town or county, as the case may be, in which it is proposed to develop, construct, or acquire the same, voting upon such issue, approve such project by voting in favor thereof at an election to be held for that purpose, or at any general or special election.

". . . . . . . . . . .

"For the purposes of this article the term 'state public body' shall mean this State, or any city, city and county, county, district, authority, agency, or any other subdivision or public body of this State."

Both sides agree to the propriety of this proceeding in mandate, since it is one to compel the chairman of the county housing authority to execute a written agreement, a ministerial act. (*City of Oxnard* v. *Dale,* 45 Cal.2d 729, 731 [290 P.2d 859]; *City of Palm Springs* v. *Ringwald,* 52 Cal.2d 620, 623 [342 P.2d 898].)

Appellant's chief contention is that a separate election must be held for the City of Hanford. Stated in another way, he contends that the city cannot join in a countywide election for the approval of a county housing project. At first blush Health and Safety Code section 34209, *supra,* would appear to answer his contention, since it authorizes the city to join with the county in a countywide housing development. Appellant, however, insists that Health and Safety Code section 34209 is unconstitutional because it conflicts with article XXXIV, section 1, of the Constitution. He interprets the language of article XXXIV, section 1, "a majority of the qualified electors of the city, town or county, as the case may be," as restricting each public body to only one means of proceeding with a federal housing project. That is to say, a city, a town, or a county, must proceed separately with any housing development within its own boundaries.

We do not agree with this contention. In the first place, article XXXIV is couched in the alternative. The disjunctive particle "or" is used when referring to the "qualified electors

of the city, town or county, as the case may be." Bouvier's Law Dictionary, third revision, volume 2, defines the word "or" as "A disjunctive particle . . . its more natural meaning, when used as a connective, is to mark an alternative and present a choice, implying an election to do one of two things." Black's Law Dictionary, fourth edition, defines the word "or, conj." as "A disjunctive particle used to express an alternative or to give a choice of one among two or more things." Webster's Third New International Dictionary, unabridged, defines "or" as " (2) Choice between alternative things, states, or courses."

It is clear that the state Legislature found no such limitation in article XXXIV as appellant professes to find, since Health and Safety Code section 34209, which is intended to implement article XXXIV, provides the method by which a city may participate in a countywide housing plan under a county housing authority. The same interpretation is followed in other provisions of the Housing Authority Law, found in Health and Safety Code sections 34200 et seq. ██ "As has frequently been said, doubts are to be resolved in favor of the constitutionality of a statute." (*Veterans' Welfare Board* v. *Jordan,* 189 Cal. 124, 141 [208 P. 284, 22 A.L.R. 1515].)

Appellant relies upon the official argument presented to the electors in the Secretary of State's Ballot Pamphlet for November 7, 1950, General Election, pages 12-13, at which election article XXXIV was adopted. The argument read, in part:

"A 'YES' vote for this proposed constitutional amendment is a vote neither for nor against public housing. It is a vote for the future right to say 'yes' or 'no' when the community considers a public housing project.

"Passage of the 'Public Housing Projects Law' will restore to the citizens of a city, town or county, as the case may be, the right to decide whether public housing is needed or wanted in each particular locality. Such is not the case at present."

Thus, argues appellant, the intent of article XXXIV, section 1, is that only people who are to be directly affected by a housing project are entitled to vote on the measure. This argument does not lend itself to a logical analysis. If we exclude cities from a countywide election, as appellant argues we must, we find electors at the north end of a county having the right to vote on a housing project in the south end of the county. Yet excluded voters in towns and cities near the development would in all probability be affected to a greater degree than those in the northern part of the county. Likewise voters in a county area just outside a city might be more directly

affected by the location of a housing project near the city limits than would voters on the opposite side of the city. It must be conceded that articulation of a measure such as article XXXIV is difficult, but not so difficult that the framers of the measure could not have expressed with clarity the intent appellant now perceives, had that been their intent.

It appears to us that article XXXIV was framed in the alternative for the purpose of coping with situations similar to the one presented here. Kings County is primarily rural, in that there are only three incorporated cities in the entire county. Hanford, the largest city and the county seat, had a population of 10,133 according to the 1960 census. It is apparent that the Hanford City Council believed a countywide housing program would best serve the interests of both the city and the county. Furthermore, as respondent points out, the establishment of Lemoore Naval Air Base in the county area some few miles from the City of Hanford has had a great impact upon both the rural area surrounding the base and the City of Hanford. That the resulting housing problem could best be handled on a countywide plan seems reasonable.

■ We are impelled to the conclusion that article XXXIV, section 1, gives the city the alternative of proceeding separately or as a part of a countywide housing plan, by the reasoning expressed in *People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621 [268 P.2d 723]. ■ The Supreme Court, at page 635, made this observation concerning the Constitution of the State of California:

" ' . . . A constitution is intended to meet and be applied to any conditions and circumstances as they arise in the course of the progress of the community. The terms and provisions of constitutions are constantly expanded and enlarged by construction to meet the advancing affairs of men. While the powers granted thereby do not change, they do apply in different periods to all things to which they are in their nature applicable. . . .' "

Where possible, the Constitution must be given a liberal, practical common-sense construction to meet changed conditions and the growing needs of the people. (*County of Alameda* v. *Sweeney,* 151 Cal.App.2d 505, 513 [312 P.2d 419] ; *McMillan* v. *Siemon,* 36 Cal.App.2d 721, 726 [98 P.2d 790].)

Appellant also asserts that the notice of election was insufficient to advise the electors of the City of Hanford that they were voting upon a housing development project, part of which would be located within the city limits. Appellant takes excep-

tion to the substance of the notice upon the ground that it was too general. It read:

"MEASURE: (Kings County Low-Rent Housing Projects) Shall the Housing Authority of the County of Kings, California, develop, construct and acquire within the County of Kings, with Federal financial assistance, a low-rent housing project or projects of not to exceed two hundred and seventy five (275) dwelling units for living accommodations for persons of low income including eligible elderly persons of low income?"

█ Notice of the time, place and purpose of the election need not rest on the foregoing official notice alone. █ The general principle involved is stated in *County of Sacramento* v. *Stephens*, 11 Cal.App.2d 110 [53 P.2d 197], at page 117, as follows:

"The test for determining whether a bond election is rendered invalid for failure to strictly comply with the statute with relation to the giving of notice thereof is to ascertain whether the voters of the district generally have had knowledge of the time, place and purpose of the election so as to give them full opportunity to attend the polls and express their will regarding the incurring of the obligation, or, upon the other hand, whether the omission has resulted in depriving a sufficient number of the qualified electors therein of the opportunity of exercising their franchise so as to change the result of the election. [Citations.]"

The record discloses there were eight articles describing the proposed countywide development, published in the Hanford Sentinel, a newspaper published in the City of Hanford but circulated throughout the County of Kings. Three similar articles appeared in The Fresno Bee, a newspaper of general circulation published in Fresno but circulated throughout the County of Kings, including the City of Hanford. These news articles, some of them accompanied by pictures, advised the voters in detail of the proposed housing project on a countywide basis. Specifically, the voters were advised that the county housing authority proposed to locate 125 units in Hanford for low income families, 25 in Hanford for elderly people of low income, 100 units in the Corcoran area, and 25 in the Stratford-Lemoore area. Additionally, two public meetings were held in the City of Hanford, at which speakers outlined in detail the location of the proposed housing units. The members of the housing authority and other interested persons addressed 27 regularly scheduled meetings of clubs,

lodges and other similar organizations in the City of Hanford, at which the details of the countywide development plan were related. A booth was established at the Kings County District Fair, held in the City of Hanford August 23 to 27, 1961, and prior to the October 3d election. The booth displayed pictures and posters regarding the proposed measure, pointing out that the plan would locate 150 units in Hanford, with 25 of them set aside for eligible elderly citizens of low income. The booth was manned by personnel who answered questions and distributed literature concerning the proposed housing development.

A countywide committee composed of more than 250 persons also supported and publicized the proposed measure. It is significant that an opposition group was organized as a Kings County Taxpayers Committee. The fact that there was active opposition to the proposed measure supports the trial court's determination that the matter was adequately publicized prior to the election.

The above mentioned mediums of notice may be considered in a determination of whether the electors had adequate notice of the measure to be voted upon. In the case of *In re East Bay etc. Water Bonds of 1925*, 196 Cal. 725 [239 P. 38], the Supreme Court said, at page 738:

"It is a well-known fact that the ordinary newspaper notice of a forthcoming election does not, in fact, have the desired effect of notifying the electors thereof. The ordinary qualified voter is so busy attending to his private affairs, and is so apathetic regarding matters touching the public welfare, that a printed newspaper notice of an election to be held, whether in the near or the distant future, even if seen by such voter, excites in him no particular interest. But, in the matter now under consideration, the direct notice of the election received by each registered voter of the district, and the public meetings and discussions 'privately and by the newspapers' regarding the proposition of the issuance of bonds would lead to the conclusion, as indicated by the court's findings, that each person in the district entitled to vote at the election not only had constructive notice but actual notice as well that the election was to be held."

The principal authority upon which appellant relies in his argument that notice was deficient is *McMahon* v. *Board of Supervisors*, 46 Cal. 214. The Supreme Court said, at page 217:

"It was not intended that the taxpayers of the township should be burdened with a heavy debt until they had first had

an opportunity to exercise their judgment, as to the expediency of the particular improvements which were contemplated. They must be informed in advance of 'the *specific* object' for which the money is to be raised; and not generally that it is to build bridges and improve highways in the township.''

The *McMahon* case is distinguishable from the case at bar. First, the notice of election in *McMahon* referred to several kinds of projects, that is, construction of new roads, bridges, macadamized county roads, and the improvement of existing highways, bridges and roads. In the case at bar the type of structure or improvement was specific, 275 housing units. Second, in the instant case there was additional notice by means of newspaper articles, public meetings, club meetings, booth at the county fair, distribution of literature, the 250-man committee, and the opposition committee. Third, in *McMahon* the electors were voting whether they should assume an obligation, since the election was to authorize supervisors to issue bonds which would be retired by the taxpayers. In the case before us the electors were assuming no financial obligation. There was no financial burden on the City of Hanford or the County of Kings, as the housing units were to be constructed under a federal housing authority. In fact, the action before us is one to compel appellant, as chairman of the housing authority, to sign the agreement in order to secure federal funds with which to develop the housing project. Thus there is no reason to apply here the rule of strict construction which has been applied to revenue measures. (*County of Los Angeles* v. *Jones*, 13 Cal.2d 554, 561 [90 P.2d 802]; 45 Cal.Jur.2d, Statutes, § 190, p. 687.)

The orders are affirmed.

Conley, P. J., and Brown, J., concurred.