387 P.2d 330

**Marion G. WIGGINS, Plaintiff-Appellant,**

**v.**

**Jose G. LOPEZ, M. A. Baca, H. G. Clouthier, Frank S. Pino, and Darwin Daniels, as Members of the Board of Education, Wagon Mound Public School District No. 12, Mora County, New Mexico, Defendants-Appellees.**

**No. 7297.**

Supreme Court of New Mexico.

Nov. 26, 1963.

Kellahin & Fox, Santa Fe, for appellant.

Roberto L. Armijo, Las Vegas, for appellees.

CHAVEZ, Justice.

This is an appeal from a judgment denying appellant's petition to enjoin the members of the board of education of Wagon Mound School District No. 12, Mora County, New Mexico, from issuing and selling certain school bonds purportedly authorized by an election held on February 20, 1962. The trial court also ordered that appellant's petition be dismissed.

Plaintiff-appellant Wiggins is a resident and taxpayer of Wagon Mound School District No. 12, Mora County, New Mexico. Defendants-appellees are the duly elected, qualified and acting members of the board of education of Wagon Mound School District No. 12. On January 15, 1962, appellees adopted a resolution providing for the calling and holding of a school bond election on February 20, 1962, for the purpose of submitting the question of the issuance and sale of $200,000 in school bonds. At least fifteen days before the election, a copy of this resolution was published in the Las Vegas Daily Optic, a newspaper of general circulation in Mora County. At least five days prior to the election, pursuant to § 73–8–24, N.M.S.A., 1953 Comp., notice of the special election was posted in five conspicuous places in the school district.

The trial court made the following finding of fact:

"7. That notice of said Special School Bond Election as prescribed by Section 73–8–24 N.M.S.1953 Anno. was not published in a newspaper, but that a publication did appear in the Las Vegas Daily Optic, a newspaper of general circulation in Mora County, New Mexico, in the issue of said newspaper under date of February 12, 1962, in the following language:

" 'For New School Facilities

" 'WAGON MOUND TO VOTE ON BOND ISSUE

" 'Wagon Mound School Superintendent Pete Santistevan has put out a brochure this week on the Wagon Mound School bond election which it [sic] to come up Feb. 20.

" 'The brochure contains information regarding the eligibility of voters to vote, the amount of the bond issue being voted on and the school improvements it will help pay for if it passes.

" 'Those owning property in Wagon Mound Public School Dist. No. 12, who are over 21, have resided in New Mexico 12 months, in Mora County for 90 days, and in the election district for 30 days are eligible to vote in the school bond election Feb. 20. The voting place will be the High School Home Eco-

nomics Bldg., in Wagon Mound, with the polls to be open 8 a. m. to 6 p. m.

" 'The brochure cites the following as being among the most immediate of the school needs:

" 'New boys' and girls' locker room facilities, to cost $30,000; facilities to be used in conjunction with swimming pool, by girls' physical education classes, by any visiting teams, community programs, summer recreation.

" 'New . scullery and kitchen equipment and exit facilities for kitchen-cafeteria, costing $20,000; to provide attractive and sanitary conditions in the cafeteria and safe exits in any emergency.

" 'New multi-purpose room and library space, to cost $28,000; to provide space for book repair, requisition books, safe keeping of library records; room will also be used as lobby space near gym, activity space for' all students, assembly room or meeting room.

" 'New steel shed for vehicle storage, costing $6,000; will provide storage space for all school owned buses, lawn mowers, cultivators and other equipment.

" 'New swimming pool facilities, enclosed indoor, to cost $102,000; to provide physical education for all students and to be used as adult swimming facility when available.

" 'New work for exterior utilities, costing $4,000; will relocate septic tanks to make room for swimming pool.

" 'New boiler plant and additions to heating system, to cost $9,200. Present plant is overloaded, and new heating plant is necessary in view of new additions to buildings.

" 'This proposed bond issue will be over a period of 10 years, period established so that taxpayers coming into the district later will share the burden of the cost with the present taxpayers since the facilities will serve the entire community.

" 'On a $1,000 assessed valuation the average cost per year to the taxpayer would be about $7.28, or approximately 61 cents per month. This would average about 2 cents per day.' "

The court also found:

"8. That notwithstanding that a notice of Special School Bond Election was not published in a newspaper in the form prescribed by statute, that the said newspaper publication mentioned in the foregoing Finding, did substantially comply with the statu-

tory provisions as to publication of Notice of Special School Bond Election."

A brochure was mailed to each boxholder in the district, containing much of the same information as appeared in the newspaper article. The court further found:

"9. That there was no testimony to indicate that either the Plaintiff or any other qualified elector within the Defendant School District failed to receive notice of Special School Bond Election held February 20, 1962."

The election was held as scheduled and resulted in a vote of 120 votes in favor of the proposed bond issue and 108 votes against the bond issue. There were approximately 400 qualified voters in the district according to the school superintendent, and at least 550 qualified voters according to the list of taxpayers submitted by appellees. We note that the canvass of returns of the general election held on November 6, 1962, compiled by the secretary of state, shows the total votes cast in the two Wagon Mound Precincts Nos. 12–A and 12–B, Mora County, to be 386.

Appellant prosecutes his appeal under two points. The first point, and the one which we find determinative, is that the failure of appellees to comply with § 73–8–24, supra, as to publication of notice in a newspaper, renders the election illegal or void.

Section 73–8–24, supra, provides:

"73–8–24. Notice of election—publication.—At least five [5] days prior to the date set for holding such election the said official authority calling it shall publish in a newspaper, and post in five [5] conspicuous places in the district a notice of election which may be in substantially the following terms:

"NOTICE OF SPECIAL SCHOOL BOND ELECTION.

"Notice is given that on the ———— day of ————, 19—, there will be held in school district No. ————, county of ————, New Mexico, an election for the purpose of determining whether said district shall become indebted in the total sum of $———— and issue bonds therefor, for the purpose of ———— (Here state purpose, as 'erecting and furnishing school buildings, etc.')

————————————————————
(Official title of authority.)"

Appellees contend that the above statute is directory and not mandatory and, by being directory, the doctrine of "substantial compliance" will apply. Hicks v. Krigbaum, 13 Ariz. 237, 108 P. 482; Lee v. Bellingham School Dist. No. 301 of Whatcom County, 107 Wash. 482, 182 P.

580. In Hicks, the order required that notice of holding the election be given by posting in three of the most public places in the district and by publishing at least once a week for three successive weeks in the Review and Miner, daily newspapers published in the city of Bisbee. It was conceded that the posting was sufficient and that there was a sufficient publication in the Miner. The publication in the Review was insufficient. The court held that the election was not vitiated by the election publication in the Bisbee Review and that publication in one newspaper was a substantial compliance with the statute. In Lee, the notice was published for only two days instead of three and the court held that the statute was directory rather than mandatory.

In City of Albuquerque v. Water Supply Co., 24 N.M. 368, 174 P. 217, 5 A.L.R. 519, the statute required that the notice of election shall be published "at least once each week for four consecutive weeks immediately prior to said election." This court held that a notice published once a week for four consecutive weeks, the last publication being thirteen days prior to the election constituted substantial compliance with the statute. The court also stated that mere irregularity in connection with an election as to notice will not, of itself, invalidate an election.

The question in the instant case is not that of an irregularity in the notice so as to apply the doctrine of substantial compliance, but a question of no compliance at all with the statute in respect to the requirement of notice by publication in a newspaper.

In State ex rel. Jackson v. Board of Commissioners of Fayette County, 122 Ohio St. 456, 172 N.E. 154, a bond election was held and all statutory proceedings were carried out according to law, except that the statutory notice was not published in a newspaper of general circulation in the county, although notice of the election was widely circulated through various private agencies. The election was conducted and carried by a vote of more than 55% of those voting upon such proposition. The court refused to issue a writ of mandamus requiring the issuance of the bonds and said:

"The question involved here is not one of substantial compliance. We have not the case of some mere clerical defect in publication, or failure to publish for the entire statutory period. It is conceded that no notice whatever was given as provided under the section. It is argued on behalf of the relator that the giving of general notice through the various civic organizations supplied the deficiency. We are unable, however to agree with this contention. The statute plainly provides that notice of the election 'shall'

be published as therein provided. The phrase used is mandatory. * * *

*    *    *    *    *    *

"The purity of elections necessarily is dependent upon the knowledge and notice that the individual voter has of the character time and place of the election in question. To grant a discretion to election officials in matters of this kind would place the sovereign power in the hands of the servants of the public instead of in the public itself. The statute is clearly mandatory."

In accord with this position is Dunn v. City of Centralia, 153 Wash. 495, 280 P. 26, where the trial court found:

" * * * notice of said election was given by causing the same to be posted at the polling place in each election precinct * * * thereafter news items calling the attention of the voters * * * to said pending election * * * was continuously published in said Centralia Daily Chronicle and in the Centralia Tribune, a weekly newspaper regularly published and printed within the city of Centralia; that each of said newspapers, during said time, had a wide circulation within the said city of Centralia, and were regularly distributed and delivered to all of the legally registered voters within the said city; that pub-

lic mass meetings were held within the said city between the time of the posting of said election notice and said election where the voters were informed of the proposition to be submitted to them at said special election, * * * and that during said time circulars, pamphlets and posters were distributed in each of the election precincts of said city, * * *."

The appellate court, in reversing an order dismissing plaintiff's action, said:

" * * * We may concede that the statutory requirement of giving official notice, even of a special election such as this, has often been held to be in a measure directory, in the sense that such requirement need only be substantially complied with when there is a large measure of general unofficial information concerning the coming election, reaching the public through newspapers, other printed circulated matter, posting of printed matter, discussion in public gatherings, etc. We think, however, it should not be held that the slight quantity of official notice given of this election as compared with that prescribed by statute, becomes a substantial compliance with the statute. This court has liberally applied the substantial compliance doctrine in upholding the validity of special elections, but we think it has

not in any sense, directly or inferentially, held that an official notice, such as this though aided by unofficial information, as was this notice, is sufficient to constitute a substantial compliance with a statutory requirement such as this. This official notice was but a slight step short of no official notice. * * *"

It has been held that newspaper articles, or comments or publicity by television or radio, cannot lawfully substitute for the mandatory requirements of the law. Special Tax School District No. 1 of Duval County, Florida v. State, (Fla.1960), 123 So.2d 316; Ashcraft v. Estill County, (Ky. 1956), 290 S.W.2d 31; State ex rel. City of Berkeley v. Holmes, (1949), 358 Mo. 1237, 219 S.W.2d 650; Turner v. Lewie, (Tex.Civ.App.1947), 201 S.W.2d 86.

Appellees cite Sacramento County v. Stephens, 11 Cal.App.2d 110, 53 P.2d 197, wherein the following test was laid down:

"The test for determining whether a bond election is rendered invalid for failure to strictly comply with the statute with relation to the giving of notice thereof is to ascertain whether the voters of the district generally have had knowledge of the time, place, and purpose of the election so as to give them full opportunity to attend the polls and express their will regarding the incurring of the obligation, or, upon the other hand, whether the omission has resulted in depriving a sufficient number of the qualified electors therein of the opportunity of exercising their franchise so as to change the result of the election. * * *"

This test, however, will not apply in direct contradiction of a legislative requirement, the legislature having the power to set these requirements. Varney v. City of Albuquerque, 40 N.M. 90, 55 P.2d 40, 106 A.L.R. 222; Special Tax School District No. 1 of Duval County, Florida v. State, supra; Ashcraft v. Estill County, supra; American Legion Phillips Post v. City of Malden, (Mo.App.1959), 330 S.W.2d 189.

It is commendable that appellees in this case made such an attempt to acquaint the voters with all of the aspects of the proposed bond issue, but the legislature has stated that notice shall be made by posting and by publication in a newspaper, and we hold that § 73–8–24, supra, has two required forms of notice: (1) posting in five conspicuous places in the district; and (2) publication in a newspaper. Thus, although appellees complied with the posting requirement, the failure to publish as required by the statute vitiates the election.

By this holding, we are not overruling our previous decisions wherein we held certain notice statutes to be directory. Taos County Board of Education v. Sedil-

lo, 44 N.M. 300, 101 P.2d 1027; Aldrich v. Gallup State Bank, 25 N.M. 315, 182 P. 863; City of Albuquerque v. Water Supply Co. supra; Barry v. Board of Education of City of Clovis, 23 N.M. 465, 169 P. 314; Board of Education of City of Roswell v. Citizens' Nat. Bank of Roswell, 23 N.M. 205, 167 P. 715. Our position is much like that of the Kentucky court in construing a notice statute for a special election. In Ashcraft v. Estill County, supra, the court said:

"It is contended news articles appearing in the editions of the newspapers when the official notices were omitted filled in all the gaps and furnished the voters with the necessary knowledge pertaining to the election, but we have written that any information of this character which may be disseminated has no legislative basis and cannot be substituted for the official notice prescribed by law. KRS 66.040 is mandatory as to the publishing and posting of the notices of an election, but the provisions therein concerning the time and manner of such publication and posting are directory only, and a substantial compliance therewith is sufficient. See, Queenan v. City of Louisville, 313 Ky. 816, 233 S.W.2d 1010. We are of the opinion the demand of the statute with reference to publication must not be ignored to the extent we have pointed out in this case, and we cannot, under the circumstances, say there was a substantial compliance with the statute.

"We have reluctantly come to the conclusion that we must reverse the judgment in this case, because we believe it is better that such be done and that the people of Estill County be relegated to the holding of another election than that we should destroy the fundamental object of the Legislature in prescribing the manner and time of publishing an official notice for a county bond election."

Having concluded that appellees did not give notice as required by statute, the judgment is reversed and remanded to the district court, with direction that the judgment heretofore entered be set aside and that judgment be entered consistent with the views herein expressed.

In view of our holding, it becomes unnecessary to consider appellant's point II.

It is so ordered.

CARMODY and NOBLE, JJ., concur.