. [No. 9846. In Bank. — October 30, 1885.]

THE PEOPLE EX REL. M. R. LEVERSON ET AL., PETITIONERS, v. THOMAS L. THOMPSON, SECRETARY OF STATE, RESPONDENT.

ELECTION — MEMBERS OF CONGRESS — EFFECT OF CERTAIN STATUTES — PROCLA-MATION BY THE GOVERNOR. — The relators claimed to have been elected repre-sentatives in Congress at the general election in 1884. Their claim was based on the alleged invalidity of the Act of March 13, 1883, dividing the State into congressional districts, and repealing all acts in conflict therewith. Only a few votes were received by them, and these were cast in pursuance of the Act of March 30, 1872, relating to the same subject as the Act of 1883, and within the repealing clause of the latter act. No proclamation was issued by the governor for an election in accordance with the Act of 1872. *Held,* that the claim of the relators, conceding the invalidity of the Act of 1883, could not be sustained.

APPLICATION for a writ of mandate. The facts are suffi-ciently stated in the head-note and opinion of the court.

*Attorney-General Marshall, M. R. Leverson,* and *George W. Chamberlain,* for Petitioners.

*H. G. Platt, Amicus Curiae, contra.*

McKinstry, J. — The petitioners are not entitled to a mandate directing the secretary of State to certify to the governor that two of·them were duly elected Congressmen-at-large, and that each of the others was elected a member of the House of Representatives, in a congressional district created by the Act of the legislature of 1872.

If it should be conceded that the Act of 1883 is invalid, because of non-compliance by the legislature with certain formalities required by the Constitution, yet, as appears from the petition and facts of which we take judicial notice, the electors throughout the State did not vote for two members of Congress at large, nor did the electors within the limits of each of the congressional districts, as prescribed by the Act of 1872, vote for a member of Congress to represent the people of such district.

Notice to the electors lies at the foundation of any popular system of government. It has sometimes. been held that the existence of a law fixing the time of an election, and the offices to be filled, is of itself notice. It may be conceded that when a term of office is to expire at a certain date after a general election (no other election to intervene), the electors take notice the office is to be filled at such general election. Some decisions have gone so far. But it is well settled that when .a vacancy has occurred by reason of death or resignation, the voters are not bound to take notice of such vacancy, and the casting of votes for a candidate or candidates to fill the vacancy does not constitute an election. The facts of the present case bring it within the principle of the decisions which hold that, in cases of special elections to fill a vacancy, a proclamation is necessary, even although the special election be held at the same time as a general election. The principle is that a notice by proclamation is necessary whenever the voters are not bound by law to take notice of the time of· the election and of the officers then ·to be chosen.

The contrary not being averred in the petition it· must be presumed that the governor, who had approved the Act of 1883, issued his proclamation for the election of a member of Congress in each of the districts defined by that act.

The general rule is that all are bound to know the law. But the recognition of this general rule does not compel us to hold, that the electors, as matter of fact, knew that the Act of 1883 was of no force or effect. It does not compel us to hold that, as matter of law, the electors throughout the State were bound to know (under penalty of disfranchisement) that a statute regular in form, certified to have been properly passed by the appropriate officers, published as other statutes are published, approved by the governor and by him acted under when he issued his proclamation, was *void*, because of matters not appearing on the face of the statute, but which could be ascertained only by an examination of the journals of the two houses of the legislature; that, thus taking notice of the invalidity of the Act of 1883, the electors were bound to know that the law of 1872 was still in full force and operation.

That the electors did not know all it is claimed they ought to have known, is apparent from the matters set forth in the petition, and from the fact that the petitioners have found it necessary to ask that the secretary of State be prohibited from estimating the votes cast for members of the House of Representatives of the United States in the respective districts created, or attempted to be created, by the Act of 1883.

Courts of justice in this State take judicial notice, perhaps, of the contents of the journals of the two houses of the legislature; the citizens at large are not required to take legal notice of the entries of the journals. The people had not actually been notified of such entries when the election was held. They had before them (let us assume) the Statute of 1883, approved by the governor, and published as statutes are required to be published, and the governor's proclamation. We are asked to decide that all the voters should have inquired whether the statute was invalid by reason of matters of which they had not been notified. That the duty was imposed upon them to make investigation into the history in the legislature of the bill, for the Act of 1883; to consider questions as to the validity of the law arising out of the proceedings in the legislature which preceded its final passage; to determine such questions *correctly*, or as petitioners claim they should be determined (questions it may be difficult of solution by the courts with the aid of counsel learned in the

law), and then to vote for officers not mentioned in the governor's proclamation, in districts not defined in the law so as aforesaid to be mentally determined to be invalid, and not recognized as continuing in existence by the executive or other officers of the State. Thus to decide, would be a formal acknowledgment by this court of results which cannot be treated as an intelligent and binding expression of the voice of the people, and which are entirely beyond any consequence legitimately derivative from the maxim that all are supposed to know the law.

Whether anybody else was or was not elected to the House of Representatives of the United States, at the general election, we are quite certain that the petitioners were not.

Writ denied and petition dismissed.

MORRISON, C. J., THORNTON, J., and McKEE, J., concurred.

ROSS, J., concurring. — I concur in the main, in the views expressed by MR. JUSTICE McKINSTRY. I wish to add that, in my opinion, the Act of 1883 is a constitutional and valid law.

Section 15 of article iv. of the present Constitution provides: "No law shall be passed except by bill. Nor shall any bill be put upon its final passage until the same, with the amendments thereto, shall have been printed for the use of the members, nor shall any bill become a law unless the same be read on three several days in each House, unless, in case of urgency, two thirds of the House where such bill may be pending shall, by a vote of ayes and noes, dispense with this provision. Any bill may originate in either House, but may be amended or rejected by the other; and on the final passage of all bills they shall be read at length, and the vote shall be by yeas and nays upon each bill separately, and shall be entered on the journal; and no bill shall become a law without a concurrence of a majority of the members elected to each House."

It is earnestly insisted by the petitioners for the writ that under this provision of the Constitution, it is requisite to the validity of a bill that each and every amendment thereto should have been read on three several days in each House. It is very certain that the Constitution does not so provide in terms. The provision with respect to the passage of bills is extremely explicit. Express authority is given for the amendment of any bill in

either House, and it is expressly declared that no bill shall be put upon its final passage until the same, *with the amendments thereto,* shall have been printed for the use of the members. If it had been intended to provide that, except in case of urgency, no bill shall become a law unless the same, *with the amendments thereto,* be read on three several days in each House, it would have been an easy matter to have said so. The insertion of the words "with the amendments thereto," in the first clause and their omission from the second, is, to my mind, very strong evidence that the clause from which they were omitted was not intended to apply to them.

In *Miller* v. *The State,* 3 Ohio St. 479, it appeared that a bill originally introduced in the Senate, after being read twice, and on different days, was committed to a select committee, who reported it back with one amendment, to wit: "Strike out all after the enacting clause and insert a new bill"; that on a subsequent day, April 12th, this amendment, after being itself amended, was agreed to, and the bill as amended, ordered to be engrossed and read a third time to-morrow; that on the morrow (April 13th) it was "read the third time" and passed, and having afterward passed the House, and been duly enrolled, was signed by the presiding officers of the two Houses, filed in the proper office, and published among the laws. The Constitution of the State then provided that "every bill shall be fully and distinctly read on three different days, unless in case of urgency, three fourths of the House in which it shall be pending shall dispense with this rule."

In that case it was claimed, as it is claimed here, that the amendment was in fact a "new bill," and that it was only read once, and, therefore, invalid under the constitutional provision quoted. In the course of the opinion the court, speaking through Judge Thurman, said: "But for argument's sake, let it be admitted that the bill as amended was read but once in the Senate; is the act for that reason void? That, counting the two readings before the amendment and the final reading, the bill was read three times, is conceded, for these readings are shown by the journal, and it is also conceded that, in general, three readings of an amendment are not necessary. But, inasmuch as the amendment in this case is styled in the journal a 'new bill,'

it is said that three readings were necessary. Why necessary? The amendment was none the less an amendment because of the name given it. It is not unusual in parliamentary proceedings to amend a bill upon striking out all after the enacting clause and inserting a new bill. (Jefferson's Manual, § 35.) When the subject or proposition of the bill is thereby wholly changed, it would seem to be proper to read the amended bill three times, and on different days; but when there is no such vital alteration, three readings of the amendment are not required."

What is here said by the learned judge covers both points made by the petitioners, for apart from their claim that every amendment must be read in each House on three several days, it is contended that the purported amendment to the bill in question was in fact no amendment but a new bill. The original bill was, one to divide the State of California into congressional districts, and the amendment adopted did but change the lines of the districts as fixed in the original bill. "The subject or proposition of the bill" was not at all changed. When that is done, the bill as amended should undoubtedly, as observed by Judge Thurman, be read on three several days, for it then becomes in effect a new bill; but not so, when there is no such vital alteration.

In the case of *The People* v. *Wallace*, 70 Ill. 680, the Supreme Court of that State held that the constitutional provision of the State requiring bills to be read on three several days before their passage did not apply to amendments, the court saying: "It is also objected that the tenth section of the act was not constitutionally adopted because it was engrafted as an amendment whilst the bill was being considered, and was not read on three several days in the House adopting it as an amendment. We are clearly of opinion that the requirement does not apply to an amendment, and the objection cannot prevail." (See also *McCulloch* v. *The State*, 11 Ind. 434, 435.) Nothing here said conflicts with the decision in *Weil* v. *Kenfield*, 54 Cal. 111, of the correctness of which I have no question.

MYRICK, J., concurring.—For the reasons given in the opinion of MR. JUSTICE ROSS, I am of the opinion that the Act of 1883 is constitutional and valid. I therefore concur in the judgment.