[Civ. No. 5242.   Third Appellate District.—September 22, 1934.]

THE COUNTY OF SONOMA et al., Petitioners, v. GEO. P. SANBORN, as County Clerk, etc., Respondent.

Edward J. Dole, District Attorney, for Petitioners.

Orrick, Palmer & Dahlquist for Respondent.

THOMPSON, J.—This is a petition for a writ of *mandamus* to compel the issuing of Analy Union High School District bonds in the principal sum of $160,000, pursuant to the provisions of section 4.966 of the School Code, as validated and existing obligations against the school district, having been duly authorized by that district by a two-thirds vote of the electors thereof at an election called and held therein for that purpose as required by the provisions of part V, chapter I, of the School Code.

The respondent concedes that all of the allegations of the petition are true, and that "in all respects . . . the proceedings for the issuance of said bonds were legal and in accordance with law", except that it is contended the notice of the holding of the bond election was not published as required by section 4.961 of the School Code "for three successive calendar weeks prior to the election".

It is alleged that Analy Union High School District is a duly organized high school district and a political subdivision of the county of Sonoma and is represented by five named trustees as required by law. In March, 1934, the high school buildings of that district were condemned as unsafe for occupancy. The pupils thereof are elsewhere temporarily housed in inadequate quarters to the great detriment of that educational institution and of the health and efficiency of the pupils and teachers thereof. The condemnation of the school buildings and the necessity of voting bonds to replace them were promptly and widely advertised by newspapers circulated throughout the district and by an elaborate printed circular which was promptly mailed to the postoffice address of each elector in the district and by placing a copy thereof in each rural and postoffice box of residents thereof as shown by the records of the postoffice department of the city of Sebastopol, which is a part of said district and which city contains a large proportion of the residents thereof. Pursuant to that notice the trustees of Analy Union High School District, by resolution duly adopted at a regular meeting of the board, called a bond election of the district to be held May 29, 1934, for the aforesaid purpose. Notices

of the time and place and purpose of this election were posted and published as required by the provisions of section 4.961 of the School Code. That proposed election was also widely advertised in newspapers of general circulation which were especially distributed throughout the district.

Just prior to the date of election which was first set, defects in the proceedings were discovered, and new proceedings were instituted by the board of trustees, by means of which the board, at a regular meeting thereof, on May 28, 1934, again called a special election for the aforesaid purpose of voting school bonds in the principal sum of $190,000 to repair, restore and equip appropriate buildings to be used for high school purposes in lieu of the condemned buildings. This election was called for June 19, 1934. Notices thereof were posted as required by section 4.961 of the School Code for more than twenty days prior to the date of election. Three of these notices were also posted for that length of time in conspicuous places in each separate precinct of the district. Notices of election were also published in "The Sebastopol Times", a newspaper of general circulation in that district once in each calendar week for three successive weeks immediately prior to the date of election, to wit, on June 1, 8 and 15, 1934. A copy of "The Sebastopol Times", containing a front half-page advertisement of the election, with bold half-inch headlines extending across the entire page in the following language: "Bonds for New Analy Building Up to Voters Tuesday", was mailed on June 15th to each and every elector and mail-box holder of the district as shown by the Sebastopol postoffice department. Notices of the election, articles and editorials with respect thereto were also repeatedly published in the "Santa Rosa Press Democrat" and "The Sebastopol Times", each of which newspapers has wide circulation in the district. Under the direction of the trustees of the district some twenty public meetings were held throughout the district in the towns of Sebastopol, Guerneville, Occidental, Monte Rio, Duncans Mills and elsewhere, under the auspices of leading fraternal lodges, service clubs, chambers of commerce, farm centers, and school councils, at which the proposed bond election was discussed. The election was also given repeated and general notice in the churches and moving picture theaters of the district. It is difficult to conceive of a more thorough and effective means

of advertising to the electors of a comparatively sparsely settled district, the holding of a school election, than that which was employed in the present case. No fraud, misconduct or coercion in the calling or holding of the election was charged. It does not appear that any elector of the district was ignorant of the time, place or purpose of the election. No one was deprived of his privilege of participating therein. The election appears to have been regularly and lawfully called and conducted in every essential respect. At the election the largest vote was polled which has ever been cast in that district at a school election. The issuing of the bonds was voted by a substantial majority in excess of the two-thirds vote required by law. The returns were canvassed by the board of supervisors and the bonds were declared to have been carried and ordered to be issued in the manner required by law. They were duly advertised for sale and R. H. Moulton & Company, as the highest and best bidder therefor, became the purchaser of bonds numbered from 1 to 160, for the principal sum of $160,000. The clerk of the board refused to issue, sign or certify to the bonds on account of the alleged defect of notice above mentioned. This petition for a writ of *mandamus* was then instituted.

The only defect of proceedings relied upon by the respondent is that the board of trustees failed to publish the notice of election for the full period of three successive calendar weeks prior to the election, as it is contended section 4.961 of the School Code requires. Only five days elapsed after the final publication of notice appeared in the newspaper, before the day of election. It is claimed this defect renders the election void and invalidates the bonds.

We are of the opinion the statute does not require the publication in a newspaper of notices of the election for the duration of three full calendar weeks before the day of election. On the contrary, we are of the opinion the requirement of the statute was fulfilled by publication of the notice "once in each calendar week" of the three successive calendar weeks which preceded the election. Section 4.961 of the School Code provides in that regard:

"The election must be called by posting notices, signed by a majority of the governing board of the district in at least three public places in the district, not less than twenty days before the election. If there is a newspaper of general cir-

culation published in any county in which any part of the district is situated, the notice must be published therein *at least once in each calendar week* for three successive calendar weeks prior to the election.''

The respondent contends that the foregoing section requires the publication in a newspaper for the duration of three entire weeks before the election, which constitutes a publication equivalent to twenty-one full days prior to the election. This construction of the statute is predicated on the assumption that a *calendar* week begins on the first day of the first publication of the notice, which, in the present case, was Friday, the first day of June, and that, since the election occurred on June 19th, only eighteen days of publication elapsed before the day of election. It is true that a calendar week may consist of any seven days of a given month, provided the language employed makes it clear that such was the intention of the contracting parties or the legislature in the employment of that term. Upon the contrary, the term ''calendar week'' as it is ordinarily used, refers to the period of time from Sunday to Sunday as it appears on the calendar. (*Scilley* v. *Red Lodge-Rosebud Irr. Dist.*, 83 Mont. 282 [272 Pac. 543, 551].) In construing a statute which required the publication of notice ''at least once a week for two consecutive calendar weeks'', in the case last cited, the court held that it was not necessary to publish notice for the duration of two full weeks, and that three insertions of the notice in a newspaper was therefore not required. It was there held the use of the term *''calendar* week'' specifically distinguished the period of time from the usual and ordinary term of a week which consists of any seven consecutive days of a month or year. It is said the term *''calendar* week'' must be given special significance to distinguish it from an ordinary week. The Montana court quotes with approval the definition of the word ''calendar'' as it appears in Webster's Dictionary, as follows: ''A 'calendar' week is a block of seven days registered on the calendar in general use, as beginning with Sunday and ending with Saturday.'' Calendar or solar periods of time are computed and so designated to distinguish them from lunar periods of time. If the legislature had intended to require the publication of notice of the election in a newspaper for the duration of the full period of three consecutive weeks

before election, it would have plainly said it must be published once a week for three consecutive weeks immediately preceding the day of election. It must be assumed the term "calendar week" was deliberately used for the express purpose of distinguishing it from the usual reference to a week consisting of any seven days of the month or year. The notice was published as the ·statute requires "once in each calendar week" for the three consecutive calendar weeks which preceded the day of election. The important portion of the statute is that the notice must be published *once in each calendar week* of that period of time designated as the "three successive calendar weeks prior to the election". The clear inference of the statute, by specifically referring to "calendar weeks", is that the notice is not required to be published for the entire duration of three full weeks before election. A glance at the calendar of June, 1934, will show that the notice which was published in the issues of June 1st, 8th and 15th of that month just prior to Tuesday, June 19th, on which the day of election was set, appeared once in each successive calendar week of the three calendar weeks immediately preceding the election, whether the calendar weeks are computed from Sunday to Sunday as they appear on the calendar, or are deemed to be the three successive groups of seven days so as to include the eighteenth day of June immediately preceding the day of election. We are therefore of the opinion the requirement of section 4.961 of the School Code with respect to the publication of the notice of election was strictly complied with.

Even though the statute heretofore referred to be construed to require publication of the notice of election for the duration of three consecutive calendar weeks immediately preceding the day of election, we are of the opinion it was substantially complied with, and that the election was lawfully held and the bonds should be validated for the reason that the electors of the district were fully informed of the time, place and purpose of the election, and the defect of notice complained of is unessential and trivial after an election has been formally held and carried, and it appears that no fraud or misconduct in the calling or holding of the election is charged, and no elector of that district who desired to participate in the election ·was prevented from doing so.

The school bond election was thoroughly advertised with unusual activity throughout every precinct of the district for a period of nearly three months by means of newspaper editorials and advertisements in at least two papers of general circulation therein, by posting notices as required by law, by frequent notices and advertisements in churches and moving picture theaters, and by discussions in at least twenty public meetings of the district held under the auspices of fraternal lodges, service clubs, chambers of commerce, farm centers and school councils. It appears the largest vote which was ever polled in a school election in that district was cast at that election. It does not appear that any elector of that district was ignorant of the exact time, place and purpose of the election, or that any qualified elector who desired to vote thereat was prevented from doing so. The substantial rights of no taxpayer of the district were injuriously affected by the alleged defect of notice. It is inconceivable, under the circumstances of this case, that any individual in that district who had the slightest interest in public affairs or in the welfare of his community, lacked information of the exact time, place and purpose of that school bond election. For these reasons the election should be upheld as lawful and the bonds should be validated.

█ After an election has been called and held in substantial compliance with the statute, slight irregularities which do not affect the substantial rights of the taxpayers should be disregarded. Section 4.982 of the School Code provides in that regard:

"No error, irregularity or omission which does not affect the substantial rights of the taxpayers within such district or the electors voting at any election at which bonds of any district of any kind or class are authorized to be issued hereunder shall invalidate the election or any bonds authorized thereby."

█ It has been held that statutes providing for notices of a bond election are mandatory when they are applied to the situation as it exists prior to the election, but, in the interest of public policy, such statutes are construed to be merely directory in an action to invalidate the bonds after the election has been held and the bonds have been carried, in the absence of a statutory declaration that the election will be invalidated for failure to strictly pursue the statute. (Sec.

4.982, School Code; *East Bay Municipal Utility Dist., etc.,* v. *Hadsell,* 196 Cal. 725 [239 Pac. 38]; *Weisgerber* v. *Nez Perce County,* 33 Idaho, 670 [197 Pac. 562]; *King* v. *Independent School Dist., etc.,* 46 Idaho, 800 [272 Pac. 507, 510]; *Seymour* v. *City of Tacoma,* 6 Wash. 427 [33 Pac. 1059]; *McLoughlin* v. *City of Prescott,* 39 Ariz. 286 [6 Pac. (2d) 50]; *State* v. *Superior Court,* 171 Wash. 423 [18 Pac. (2d) 51].)

The test in determining whether the slight omission to publish notice of the election for the duration of the full period of three consecutive weeks immediately preceding the day of election, as contended for by the respondent, "affects the substantial rights of the taxpayers" of the district, so as to invalidate the election, is to ascertain from the record whether the voters of that district generally had notice of the election, or whether upon the contrary a sufficient number of qualified voters therein were prevented by that defect of notice from participating in the election so as to make it likely that the result of the election would have been changed by a strict compliance with the statute. In 20 C. J. 96, sec. 80, it is said in that regard:

"The test for determining whether an election is invalidated for want of a notice prescribed by statute is whether, on the one hand, the voters generally have had knowledge of the election and full opportunity to express their will, or whether, on the other hand, the omission has resulted in depriving a sufficient number of electors of the opportunity to exercise their franchise to change the result of the election."

We have no hesitancy in saying from the record that no considerable number of the electors of that district were ignorant of the time and place of the election. It does not appear that a single voter of that district who desired to participate in the election, failed to do so. From the record in this case it would be absurd to hold that the lapse of two other days following the final publication of notice which was given in the newspaper would have resulted in informing other voters of that district of the proposed election who did not already possess that knowledge. We are therefore of the opinion the notice was published in substantial compliance with the statute even if the respondent's construction thereof should prevail and that the rights of no tax-

payer of that district were injuriously affected by the alleged defect of notice.

Irrespective of the alleged defect of publication of notice of the election, the bonds should be validated for the reason that it appears the substantial rights of the electors of that district were not injuriously affected by the alleged omission. In the case of *East Bay Municipal Utility Dist.* v. *Hadsell, supra,* a utility district bond election was held to be legal and bonds in the aggregate sum of $39,000,000, which were voted thereat, were validated in spite of the fact that the election was called and held twenty-one days after the adoption of the ordinance providing therefor, which notice was in conflict with the provision of the Utility District Act under which the bond election was held. The statute declared that "No ordinance passed by the board shall take effect within less than thirty days after its passage." In other words, it was there contended the bond election was prematurely held nine days before the statute authorized it to be called. The court there said:

"If the election has been honestly and fairly conducted, and no one has been injured by the manner in which the preliminary steps leading thereto have been taken, no reason exists for declaring it invalid. In the instant case there was no evidence offered on the part of the defendants tending to show that they had been prejudicially affected by the procedure which had been adopted and followed leading up to the election. . . .

"It would follow, as a conclusion from what has been said, that, as applied to the facts of this case, notwithstanding some authorities to the contrary, as cited in appellant's brief, the failure to give the full thirty days' notice of the election in nowise affected the substantial rights of the defendants in the premises."

Likewise, for similar reasons, a bond election was declared legal and the bonds were validated in the case of *Weis-gerber* v. *Nez Perce County, supra,* which was an action by a taxpayer to enjoin the issuing of the bonds on the ground, among others, that the notices of election were not posted for the duration of twenty days before election as required by the statute with relation thereto. It was there conceded that some of the required notices were not posted for the

full time specified by the statute. The court said in that regard:

"We are of the opinion that the correct rule, and the one supported by the great weight of authority may be stated as follows: Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void. . . .

"The court found that the electors of the county were fully informed as to the time, place and purpose of holding the election, and as to the polling place in each precinct where the votes would be received. The court also found that none of the defects above referred to affected the result of the election. It is not averred in the complaint, nor shown by the record, that any elector was deprived of his vote by reason of the fact that notices were not posted the statutory length of time in the five precincts. The court further found affirmatively that none of the electors failed to vote by reason of any of the irregularities mentioned in the complaint.

"We are of the opinion that the election was not illegal or void on account of the defects in the posting of notices in the five precincts of the county."

For the foregoing reasons, we are satisfied the school bond election which is involved in this proceeding was lawfully called and conducted and that said bonds for the sum of $190,000 and interest which were voted thereat are valid and binding obligations upon the Analy Union High School District of Sonoma County.

It is therefore ordered that the writ of *mandamus* issue as prayed for, directing the respondent to issue, sign, seal and certify the Analy Union High School District bonds for the principal sum of $160,000, in the manner required by

law, and deliver them to the purchasers thereof, as valid binding obligations of that school district for said principal sum and interest according to the terms thereof.

Pullen, P. J., and Plummer, J., concurred.