[Sac. No. 7269.    In Bank.    Feb. 16, 1961.]

VETERANS' FINANCE COMMITTEE OF 1943, Petitioner,
v. BERT A. BETTS, as State Treasurer, Respondent.

Stanley Mosk, Attorney General, E. G. Funke, Assistant Attorney General, V. Barlow Goff and Claude D. Rohwer, Deputy Attorneys General, for Petitioner.

George Herrington and Orrick, Dahlquist, Herrington & Sutcliffe for Respondent.

McCOMB, J.—The Veterans' Finance Committee of 1943 (hereinafter referred to as "petitioner") has petitioned this court for a writ of mandate to compel Bert A. Betts, as Treasurer of the State of California (hereinafter referred to as "respondent"), to cause notice of sale of $100,000,000 principal amount of bonds to be published and to cause said bonds to be prepared and sold, as directed by resolutions of petitioner. Respondent has filed a general demurrer to the petition.

Petitioner is an agency of the State of California created by section 991 of the Military and Veterans Code of this state.

The members of the agency are: Edmund G. Brown, Governor of the State of California; Alan Cranston, State Controller; John E. Carr, Director of Finance; Joseph M. Farber, Director of Veterans Affairs; and respondent.

## CHRONOLOGY

(1) The Legislature of the State of California, at its 1960 First Extraordinary Session, duly adopted a resolution entitled: "Assembly Constitutional Amendment No. 4—A resolution to propose to the people of the State of California an amendment to the Constitution of the State, by adding to Article XVI thereof a new section to be numbered 21, relating to the issuance of bonds to provide farm and home purchase aid for veterans." (Stats. 1960, 1st Ex. Sess., ch. *12*, p. ——, § ——.)

(2) The Legislature at the same session duly adopted the Veterans Bond Act of 1960, constituting article 5h of chapter 6 of division 4 of the Military and Veterans Code of the State of California. (Stats. 1960, 1st Ex. Sess., ch. 50, p. ——, § 1; Stats. 1960, 1st Ex. Sess., ch. 80, p. ——, § 1.)

It was provided in said act that it should take effect upon adoption by the people of an amendment to the Constitution of the State of California approving, adopting, legalizing, ratifying, validating, and making fully and completely effective the Veterans Bond Act of 1960.

(3) The Legislature at its 1960 First Extraordinary Session also duly adopted an act entitled: "An act calling a special election to be consolidated with the Direct Primary Election of 1960 and to provide for the submission to the electors of the State at such consolidated election constitutional amendments adopted by the Legislature at the 1960 First Extraordinary Session, to take effect immediately." (Stats. 1960, 1st Ex. Sess., ch. 12, p. ——; hereinafter referred to as "Chapter 12.")

This act passed both the Assembly and the Senate on April 6, 1960. It was approved by the Governor and filed in the office of the Secretary of State on April 9, 1960.

Section 4 of Chapter 12 reads: "The special election provided for in this act shall be proclaimed, held, conducted, the ballots shall be prepared, marked, collected, counted and canvassed and the results shall be ascertained and the returns thereof made in all respects in accordance with the provisions of the Constitution applicable thereto and the law governing general elections insofar as provisions thereof are applicable to the election provided for in this act."

(4) A special election was held throughout the State of California on June 7, 1960, which special election was consolidated with the direct primary election held on the same date.

Assembly Constitutional Amendment No. 4 was submitted to the electors at the special election and appeared upon the ballot used in the consolidated election.

The Secretary of State distributed ballot pamphlets relating to the measures specified in Chapter 12, including Assembly Constitutional Amendment No. 4, to the county clerk of each county in the state not less than 30 days before the election, and the several county clerks commenced to mail the pamphlets to the voters not less than five days before the election. Distribution of the ballot pamphlets was conducted in all respects in accordance with the provisions of section 1515 of the Elections Code of the State of California.

(5) At the election the people approved and ratified Assembly Constitutional Amendment No. 4 by a majority of the qualified electors voting thereon. 2,254,410 votes were cast in favor of the amendment, and 1,217,808 votes were cast against the amendment. This result was duly certified by the Secretary of State on July 11, 1960.

(6) On December 7, 1960, upon request of the Department of Veterans Affairs of the State of California, supported by a statement of the pertinent plans and projects of the department, and with the approval of the Governor, petitioner adopted its Resolutions I(1960), II(1960), and III(1960).

Petitioner by said Resolution III(1960) determined that it was necessary and desirable to issue bonds authorized under the Veterans Bond Act of 1960 in the aggregate principal amount of $100,000,000 in order to carry such plans and projects into execution. The resolutions directed respondent, among other things, to cause bonds to be prepared, to cause notice of the sale of $100,000,000 principal amount of said bonds to be published, and to cause said bonds to be sold.

(7) Under the terms of the Veterans Bond Act of 1960 and the State General Obligation Bond Law (Gov. Code, § 16720 et seq., as adopted by the Veterans Bond Act of 1960), it is the duty of respondent, as Treasurer of the State of California, to cause notice of sale to be prepared and to cause bonds to be prepared and sold, as directed by petitioner.

Respondent has nevertheless refused to cause notice of such sale to be published and refused to cause bonds to be prepared and sold, as directed.

He bases his refusal upon the ground that Assembly Constitutional Amendment No. 4 was not validly adopted and is not a part of the Constitution of the State of California and that the Veterans Bond Act of 1960 has not been validly

ratified and approved, for the reason that no proclamation of the special election called by Chapter 12 was issued by the Governor and no proclamation of the Governor was published in any county of the state prior to the date of the special election.

■ This is the sole question presented: *Was the special election of June 7, 1960, invalid because no proclamation by the Governor was issued and published prior to the holding of the special election?*

*No.*

The courts are reluctant to defeat a fair expression of popular will in an election and will not do so unless so required by the plain mandate of the law. ■ It is the general rule that any errors or defects claimed to exist in a notice of election will not invalidate the election unless there is some showing that the electors were in fact misled by such defects. (*Ivanhoe Irr. Dist.* v. *All Parties,* 53 Cal.2d 692, 732 [21], [22] [350 P.2d 69] ; *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271, 277 [2] [253 P.2d 464].)

■ In the instant case the failure to issue a formal proclamation and publish it did not invalidate the election.

Section 1001 of the Elections Code provides: ''At least 30 days before the general election, and at least 70 days before a special state-wide election or a special election to fill a vacancy in the Office of Representative in Congress, State Senator or Member of Assembly, the Governor shall issue an election proclamation, under his hand and the Great Seal of the State, and transmit copies to the boards of supervisors of the counties in which the elections are to be held.''

The boards of supervisors must then publish the proclamation in their respective counties, as directed by section 1003 of the Elections Code.

■ It is essential to the proper exercise of the elective franchise that the voters be informed of the offices to be filled and the measures to be voted upon at any election. Accordingly, where the voters are not bound by law to take notice of the time and the place of holding an election, and the officers to be chosen or measures to be voted upon at such election, a failure to give the statutory notice vitiates the election.

■ Thus, it has been held that in the case of a special election to fill a vacancy caused by death or resignation, a proclamation is necessary to inform the electors that a vacancy exists and to call on them to fill it, even though the election

to fill the vacancy is to be held at the same time and place as a general election. (*People* v. *Thompson*, 67 Cal. 627, 628 [9 P. 833]; *Kenfield* v. *Irwin*, 52 Cal. 164, 169; *McKune* v. *John B. Weller*, 11 Cal. 49, 62 et seq.; *People* v. *Porter*, 6 Cal. 26, 29.)

The rule is otherwise when the time and the place of holding an election, and the officers to be chosen or measures to be voted upon at such election, are prescribed by law, since the electors are presumed to know the law. Under such circumstances, the proclamation directed to be given by section 1001 of the Elections Code, being merely additional notice to that contained in the statute, is not requisite to the validity of the election. (*People* v. *Rosborough*, 14 Cal. 180, 188; *People* v. *Brenham*, 3 Cal. 477, 487.)

The rule is stated in Cooley's Constitutional Limitations, volume 2 (8th ed. 1927), page 1372: "Where, however, both the time and the place of an election are prescribed by law, every voter has a right to take notice of the law, and to deposit his ballot at the time and place appointed, notwithstanding the officer, whose duty it is to give notice of the election, has failed in that duty. The notice to be thus given is only additional to that which the statute itself gives, and is prescribed for the purpose of greater publicity; but the right to hold the election comes from the statute, and not from the official notice."

In the instant case Chapter 12 prescribed the time and the place of the special election and the measures to be voted upon. This constituted notice to the electors, given well in advance of the time set for the election, and the fact that no proclamation by the Governor was issued and published prior to the holding of the election does not affect the validity of the election.

The demurrer is overruled, and it is directed that a writ of mandate be issued forthwith in accordance with petitioner's prayer.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.