[Civ. No. 21421. First Dist., Div. One. July 9, 1963.]

MENLO PARK CITY SCHOOL DISTRICT, Plaintiff and Appellant, v. JAMES R. TORMEY, as County Superintendent of Schools, etc., Defendant and Respondent.

Keith C. Sorenson, District Attorney, and Howard E. Gawthrop, Deputy District Attorney, for Plaintiff and Appellant.

Weaver & Orr and Lee R. Orr for Defendant and Respondent.

BRAY, P. J.—In a declaratory relief action plaintiff appeals from a judgment declaring invalid an election increasing the maximum tax rate of the district.

### QUESTION PRESENTED

Was the election invalid because of failure to publish notice of the election?

### RECORD[1]

Plaintiff district is an elementary school district in San Mateo County. For five years the district has operated its five schools on a maximum tax rate of $1.99 on each $100 of assessed valuation, authorized in an election held pursuant to section 20803, Education Code. This authorization expired June 30, 1963. Unless the election herein considered is valid, on that date the tax rate reverted to 90 cents (see Ed. Code § 20751). The district for the last few years has, in fact, used the full $1.99 rate.

On February 5, 1963, the governing board of said district (hereinafter referred to as the board) adopted resolution 59 calling for the holding of an election to increase the maximum tax rate of the district to $2.16, and consolidated the election with the election for members of the board to be held April 16, 1963, as provided for in section 20805. The election for members of the board was called for and held in compliance with all the statutes applicable to such election. Notice of the election of board members was published in compliance with section 942, Education Code. The election

---

[1]There is no dispute as to the facts in this case. They appear in an agreed statement of the parties.

on the proposition to increase the maximum tax rate was called and held in conformity with all the statutes applicable to such elections, *except* that the notice of this election was not published in a newspaper of general circulation in the county as required by section 20803, Education Code. However, notices of said election were posted in three public places.[2] Notices of the election stating the purpose of the election and the time and place thereof were mailed with a sample ballot by the county clerk to each registered voter eligible to vote in said election.

At the election held on April 16, 1963, the proposition to increase the maximum tax rate carried.[3]

Section 20803 requires the county superintendent of schools to approve the budget of each school district and file one copy with the county auditor, and one copy with the board of supervisors, together with a statement showing the amount of school district taxes required by each district. Because of the failure to publish the notice above mentioned, the county superintendent refused to approve any budget requiring a tax rate in excess of 90 cents.

Thereupon plaintiff district filed this action seeking judgment declaring the election valid and requiring the defendant county superintendent of schools to certify to the board of supervisors that the maximum tax rate of the district has been increased to $2.16. Defendant answered, denying the validity of the election. This case was tried upon an agreed statement of facts similar to the one presented to this court. The trial court entered judgment for defendant declaring that the failure to publish the notice avoided the election.

### FAILURE TO PUBLISH THE NOTICE

Plaintiff contends that the voters received adequate notice of the election; that the omission to publish did not affect the result of the election, and that therefore the failure to publish the notice did not invalidate the election. The notices of the election which the voters received are: the official notices posted, and the personal notices sent the voters by the

---

[2] Section 20803 provides that "the election shall be called, held, and conducted . . . in as nearly the same manner as is practicable as are elections for the issuance of school district bonds . . ." Section 21751, relating to school district bond elections, requires posting in at least three public places.

[3] A prior election held on March 20, 1962, to increase the maximum tax rate failed to obtain the necessary votes to carry the proposition.

county clerk. Additionally there was extensive newspaper coverage of the election, including some ten articles on the election appearing in the newspaper in the district which plaintiff states would have published the official notice, had it been published.[4]

Section 20803 provides that in elections to increase the maximum tax rate of a school district, notice of the election shall be published "pursuant to section 6063 of the Government Code" in a newspaper of general circulation in the county, if there is such. The section then provides that "in addition" to the published notice certain notice and a sample ballot be sent to each elector. This portion of the section was complied with.

As will hereinafter appear, the courts of California have been liberal in the application of the principle that it is the duty of the courts to validate an election if possible. The following cases so hold: In *People* v. *Brenham* (1851) 3 Cal. 477, it appeared that an election for municipal officers was held in the City of San Francisco, although the common council had not ordered it, and no public notice thereof was given. The court held that these facts did not vitiate the election for the reason that the city charter provided that the municipal officers should be elected annually at the same time and place as the general elections of state officers.

*People* v. *Prewett* (1899) 124 Cal. 7 [56 P. 619], held that an election for school trustees was not invalid because the notice of election "gave notice 'that the annual school meeting for the election of school trustees will be held,' et cetera, and did not state that vacancies in the office existed which were to be filled." (P. 9.) The court held the notice "defective" (p. 11) but stated that there was no evidence that the voters had been misled by it.

*Sanchez* v. *Fordyce* (1903) 141 Cal. 427 [75 P. 56], demonstrates how far the courts have gone to uphold an election against defects in procedure. There the proclamation of the board of supervisors called for the election of two constables in Ventura township, although the law only provided for one.

---

[4]Plaintiff points out that the vote in the district was higher than the vote in 18 of the 28 school districts holding elections on the same date and that on March 20, 1962, at an election in this district to increase the maximum tax rate, where proper notice was published, only 27 per cent of the eligible voters voted, while at this election 31 per cent voted. Also the proposition received a very substantial majority, 1,914 affirmative votes to 1,014 votes against.

The notice of the election also provided that two constables were to be elected. Two candidates were voted for by the electors. At the election contest following the election the court held the election to be valid, refused to count any ballot cast on which more than one person was voted for, and declared elected the candidate receiving the highest number of single votes.

In *Rideout* v. *City of Los Angeles* (1921) 185 Cal. 426 [197 P. 74], there were two bond elections at which the ballots did not comply with the law. Stating, ''It is a primary principle of law as applied to election contests that it is the duty of the court to validate the election if possible. That is to say, the election must be held valid unless plainly illegal [citations]'' (p. 430), the court held the election valid.

*In re East Bay etc. Water Bonds of 1925* (1925) 196 Cal. 725 [239 P. 38], dealt with a bond election, notice of which was nine days short of the statutory required period. While the statute under which the election was held required that the court in determining the regularity of any such election '' 'must disregard any error, irregularity, or omission which does not affect the substantial rights of the parties to said action or proceeding' '' (p. 736), the court decided that the election was valid more on general principles as discussed in the many authorities it considered than on this provision of the statute. It quoted from *Weisgerber* v. *Nez Perce County,* 33 Idaho 670 [197 P. 562] : ''However, we are of the opinion that the correct rule, and the one supported by the great weight of authority, may be stated as follows: Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void. (Citing thirty authorities.)'' Quoting from *Dishon* v. *Smith,* 10 Iowa 212: ''Upon considerations like these the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have, in truth, been called upon and

have spoken. In the present case, whether there were notices or not, there was an election and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise.'' Particularly applicable to our case as to the effect of the failure to publish the notice of election is the following from the *East Bay* case (p. 738): ''It is a well-known fact that the ordinary newspaper notice of a forthcoming election does not, in fact, have the desired effect of notifying the electors thereof. The ordinary qualified voter is so busy attending to his private affairs, and is so apathetic regarding matters touching the public welfare, that a printed newspaper notice of an election to be held, whether in the near or the distant future, even if seen by such voter, excites in him no particular interest. But, in the matter now under consideration, the direct notice of the election received by each registered voter of the district, and the public meetings and discussions 'privately and by the newspapers' regarding the proposition of the issuance of bonds would lead to the conclusion, as indicated by the court's findings, that each person in the district entitled to vote at the election not only had constructive notice but actual notice as well that the election was to be held. Such being the case, it is indisputable that the result of the election was not prejudicially affected by the failure to give the extra nine days' notice of the election, as provided, in effect, by the statute; nor did the 'error, irregularity, or omission . . . affect the substantial rights of the parties to said action or proceeding.' ''

In *County of Sonoma* v. *Sanborn* (1934) 1 Cal.App.2d 25 [36 P.2d 419], where it was contended that the notice of a school bond election was not given for a sufficient length of time prior to the election, the court held almost in the above quoted words from *East Bay, supra,* that after a bond election has been had statutes providing for notice of the election which would be held to be mandatory prior to the election are construed to be merely directory. To the same effect is *County of Sacramento* v. *Stephens* (1936) 11 Cal.App.2d 110 [53 P.2d 197], where it was contended that the statute which required notice of a school bond election to be published in both counties where the school district included area in both counties, was not complied with. Also the same rule was applied in *People* v. *City of Carlsbad* (1954) 128 Cal.App.2d 77 [274 P.2d 740], where the notices of the election to in-

corporate the city were defective and not published as required by statute.

In *Ivanhoe Irr. Dist.* v. *All Parties* (1960) 53 Cal.2d 692, 732 [3 Cal.Rptr. 317, 350 P.2d 69], where the court was considering, among other matters, alleged defects in the notices of election at which contracts between two districts and the federal government (Central Valley Project) the court said (p. 732): "It must be remembered that in both elections the approval of the contracts won by substantial majorities. Once the voters express their approval in an election it would take a most serious error to justify a court in upsetting that election. . . . It is also a general rule applicable to claimed defects in notices of election that any errors or defects therein will not invalidate an election unless there is some showing that the electors were, in fact, misled by such defects [citations]."

The same principle is enunciated in *Veterans' Finance Committee of 1943* v. *Betts* (1961) 55 Cal.2d 397, 401 [11 Cal. Rptr. 103, 359 P.2d 471], where the court was considering the failure to issue and publish a proclamation by the Governor of a special election for the adoption of a certain constitutional amendment providing for the issuance of bonds to provide farm and home purchase aid for veterans.

In *Board of Supervisors* v. *Rechenmacher* (1951) 105 Cal. App.2d 39 [232 P.2d 514], it was held that errors in the published notice of a school bond election as to the schedule of maturities and the number and amounts of bonds to be issued did not invalidate the election as the errors "did not and could not 'affect the substantial rights of the taxpayers within the district or the electors voting at the election authorizing the bonds.' " (P. 43.)

In *Cacheville etc. School Dist.* v. *Hiddleson* (1951) 105 Cal.App.2d 36 [233 P.2d 57], the notice of election for the issuance of school bonds incorrectly stated that the number of bonds to be issued was 41 instead of 38 and the bonds were to run for 27 rather than 25 years. After the election the board of supervisors ordered that four of the bonds not be issued. The court held that the action of the board of supervisors in correcting the error in the election proceedings "achieved an end result which gave substantial effect to the intention of the electors and hence comes squarely within the provisions of said section 7463" of the Education Code (now § 21758). (P. 38.) Section 20803 provides that "the election shall be called, held, and conducted by the county

superintendent of schools, in as nearly the same manner as is practicable as are elections for the issuance of school district bonds . . .'' Section 21758 relates to school bond elections, and by the above reference in section 20803, would apply to elections to increase the maximum tax rate. Section 21758 reads: ''No error, irregularity, or omission which does not affect the substantial rights of the taxpayers within the district or the electors voting at any election at which bonds of any district are authorized to be issued shall invalidate the election or any bonds authorized.''

Apparently the last case in California avoiding an election for failure to comply with statutory notice provisions is *Stumpf* v. *Board of Supervisors* (1901) 131 Cal. 364 [63 P. 663, 82 Am.St.Rep. 350], where it was held that an election to create a sanitary district was void where the statutory requirement that the proclamation calling the election be both published and posted was not met because of failure to post. The opinion merely states without discussion that ''Without such posting the election was void. . . .'' (P. 368.) No consideration is given to *People* v. *Brenham, supra,* 3 Cal. 477, or *People* v. *Prewett, supra,* 124 Cal. 7, which preceded *Stumpf.* Nor has its ruling been followed. In *People* v. *City of Carlsbad, supra,* 128 Cal.App.2d 77, *Stumpf* was cited but not followed.

In addition to *Stumpf,* respondent relies on *Town of Cortlandt* v. *Village of Peekskill* (1939) 281 N.Y. 490 [24 N.E.2d 139, 142], which held that the failure to post statutory notice of election avoided the election even though ''no harm was done, if such be a fact, that no voters were disfranchised by virtue of the irregular notice. . . .'' (P. 142.) In view of the attitude of the California courts as shown in the cases hereinbefore cited, we do not feel that the New York case is persuasive.

Respondent contends that in some of the cases hereinbefore cited the voters were chargeable with notice of the election by reason of the inclusion of the date of the election in the statute and argues that for that reason the failure to give the statutory notice became unimportant. Respondent then quotes from *Veterans' Finance Committee of 1943* v. *Betts, supra,* 55 Cal.2d at page 401, as hereinafter set forth. As we have hereinbefore stated, that case involved a special election to consider the approval of a veterans' bond act which was consolidated with the direct primary election, and the court held that the failure of the Governor to proclaim the special election did not invalidate the election because the

special election was consolidated with the primary election, the time and place of the latter having been fixed by law. The situation was somewhat similar to that in the case at bench, in which the election for increase of maximum tax rate was consolidated with the election for school board members, the notice of time and place of which was properly given the electors.

The language quoted by respondent from *Veterans' Finance Committee* reads (p. 401): "It is essential to the proper exercise of the elective franchise that the voters be informed of the offices to be filled and the measures to be voted upon at any election. Accordingly, where the voters are not bound by law to take notice of the time and the place of holding an election, and the officers to be chosen or measures to be voted upon at such election, a failure to give the statutory notice vitiates the election."

In our case we do not have a "failure to give the statutory notice"; we have merely a failure to give a part of the statutory notice. A part of the required notice was given, namely, the notice by posting and the notice and sample ballots sent each elector by mail. We do not believe that the above quoted language was meant to cover or covers a situation where, as here, there is only a partial failure to give the statutory notice and where it appears that the substantial rights of the electors were in nowise affected. It applies only to situations where the statutory requirement of notice was not complied with in any respect.

In the following cases (hereinbefore cited), the time and place of the election was not fixed by law and yet the election of which the notice was either defective or not given was held valid. In *People* v. *City of Carlsbad, supra,* 128 Cal. App.2d 77, the notice did not state the date of the election nor the number of inhabitants of the proposed city as required by section 34320, Government Code, and was not published for at least two weeks prior to the election as required by section 34319, Government Code; *Sanchez* v. *Fordyce, supra,* 141 Cal. 427 (notice calling for election of two constables, whereas law only provided for one); *Rideout* v. *City of Los Angeles, supra,* 185 Cal. 426 (ballots did not comply with the law); *In re East Bay etc. Water Bonds of 1925, supra,* 196 Cal. 725 (notice of bond election nine days short of required period); *County of Sonoma* v. *Sanborn, supra,* 1 Cal.App.2d 26 (notice of school bond election not given for period required).

As bearing on the importance or lack of importance of publication of notice where the required posting and mailing has been done, is the fact that under section 20803 if there is no newspaper published in the county where the school district is situated, no publication is required. If in the latter instance, posting and mailing is sufficient to give the district electors notice of the election, it would appear that the failure to publish notice where there is a newspaper in the county should not be fatal. Thus, the general rule quoted in *Veterans' Finance Com., supra,* to the effect that a failure to give the statutory notice vitiates an election where the voters are not bound by law to take notice of the time and place of holding the election, cannot apply to the elimination of a part of the statutory notice, which part the Legislature has decreed need not under some circumstances be given.

"The test for determining whether an election is invalidated because of a failure to strictly comply with the notice provisions prescribed by the statute has frequently been stated to be whether the voters generally have had knowledge of the election and full opportunity to express their will, or whether the variance may have affected the result by depriving a sufficient number of voters of the opportunity to exercise their franchise." (*People* v. *City of Carlsbad, supra,* 128 Cal.App.2d at p. 84.)

In our case there was evidence of actual notice and widespread publicity with respect to the date, place and purpose of the election given the residents of the district. Under the circumstances of this case to invalidate the election because of the failure to publish the notice would violate the rule set forth in *East Bay, supra,* at page 744: "The books are filled to overflowing with statements of the rule, in substance, that, wherever possible from a standpoint of legal justice to validate an election, it is the duty of the court to do so."

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment declaring the validity of the election and granting the other relief prayed for, in accordance with the views herein expressed.

Sullivan, J., and Molinari, J., concurred.